No. 23,993.

KATHERINE TACKETT, *Appellee,* v. UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. APPEAL BOND—*Liability of Sureties on Appeal or Supersedeas Bond When Appeal is Not Perfected.* The surety on an appeal or supersedeas bond has no voice in the conduct of the litigation nor any interest in the matters involved. The understanding is that the appeal is for the sole benefit of the principal in the bond, who alone has the right to carry on or terminate the appeal in the manner he chooses (in the absence of fraud or connivance between himself and the appellee), and if at any time he concludes that continuing the litigation will be of no advantage to him, or will entail useless expense, he has the right to stipulate for an affirmance or dismissal of the appeal, or he may abandon the appeal, without thereby releasing the surety.

2. SAME—*Notice of Appeal Not Filed in the Office of the Clerk—Liability of Sureties on Supersedeas Bond.* A surety company executed a supersedeas bond which contained the recital that "Whereas, the said The Kansas City Railways Company intends to prosecute" an appeal. The bond followed the language of section 586 of the civil code and was conditioned "that the appellant will pay the condemnation money, and costs in case the judgment or final order shall be affirmed in whole or in part." The bond was filed with the clerk of the trial court, and notice of the appeal was served by the defendant in the action upon plaintiff's attorneys, but no notice was filed in the office of the clerk of the trial court (which is necessary in order to perfect an appeal). In an action on the bond the answer alleged that no proceedings were taken toward an appeal other than the service of a notice of an appeal; that the notice was never filed in the office of the clerk, and that the time never arrived when the bond could or did prevent the issuance of and execution or stay proceedings; that neither the defendant nor the principal in the bond received any benefit, and that the plaintiff was never in any way prejudiced by reason thereof, and that there was no consideration for the bond. *Held,* that a demurrer was properly sustained to the defense.

Tackett v. Guaranty Co.

3. SAME—*Subsequent Agreement Between Original Parties that No Appeal Should Be Taken Did Not Release Sureties.* The answer alleged as another defense that after the bond was executed an arrangement was entered into between the principal and the railways company, defendant in the original action, that no appeal should be taken and that plaintiff's judgment should be paid in monthly installments of $1,000; that payments were made in pursuance of this arrangement until her judgment was reduced from $15,000 to $9,500, at which time further payments ceased because of the insolvency of the railways company. At the conclusion of the evidence on this defense the court directed a verdict against the surety company. *Held,* that the ruling was correct.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed January 6, 1923. Modified and affirmed.

*L. W. Keplinger,* of Kansas City, *R. E. Ball,* and *I. P. Ryland,* both of Kansas City, Mo., for the appellant.

*David F. Carson, C. A. Miller, William Drennan,* and *James T. Cochran,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Katherine Tackett recovered a judgment in the district court against the Kansas City Railways Company for $15,000. This is an action on a supersedeas bond given by the surety company, defendant. The petition alleged that for the purpose of staying execution and superseding the judgment, the defendant herein executed the bond, which was filed in the office of the clerk of the district court; that the railways company served notice of appeal, and that the bond stayed execution and the collection of the judgment.

The answers, besides a general denial, admitted the rendition of the judgment but alleged that at the time the bond was executed the railways company was contemplating an appeal, and as a means of staying execution during the pendency of the appeal, should any be taken, procured the defendant's signature on the bond; but that no proceedings were taken toward an appeal further than the service of a notice of appeal; that the notice was never filed in the office of the clerk of the district court and that the time never arrived when the bond could or did prevent the issuance of an execution or stay the proceedings; that neither defendant nor the railways company ever received any benefit by reason of the bond, plaintiff was never in any way prejudiced by reason thereof, and, therefore, there was no consideration for the bond.

Another defense alleged was that after the bond was executed an arrangement was entered into between Katherine Tackett and the railways company to the effect that judgment should be entered in favor of plaintiff's husband in another suit then pending in the same court against the railways company; that no appeal should be taken in Katherine Tackett's case, and that the judgment in her favor should be paid in monthly installments of $1,000; that payments were made in pursuance of this arrangement until her judgment was reduced from $15,000 to $9,500, at which time further payments ceased by reason of the insolvency of the judgment debtor.

The answer alleged that the surety company was not a party to the agreement which it is claimed was entered into by plaintiff and the railways company under which the proceedings were stayed in consideration of the payment of the judgment in monthly installments.

The court sustained a demurrer to the second defense—based on the failure to perfect an appeal; and at the close of the evidence on the third defense, directed a verdict in favor of plaintiff for $9,500. From this judgment defendant appeals.

Briefly stated, the defendant's contentions respecting the defense, to which the court sustained the demurrer, are these: The bond was not an absolute promise to pay, because on appeal the judgment might be reversed, which would inure to the benefit of the surety; and the chance that there might be a reversal or modification of the judgment constituted part of the consideration for the bond. In this connection, it is argued that, after making it impossible for the railways company to secure a reversal of the judgment, plaintiff is now claiming the same right to which she would be entitled if the judgment in that case had been affirmed.

It is urged that the surety is in no manner estopped, by reason of any recitals in the bond, from alleging and proving that no appeal was taken, the recital in the bond being: "And, whereas, the said, The Kansas City Railways Company, *intends* to prosecute" an appeal—not that it has taken an appeal. The defendant concedes that if there had been an actual appeal which was afterwards dismissed for some failure to comply with the requirements of a perfect appeal, it would be liable on the bond.

In defendant's brief it is said:

"The supersedeas is not an agreement that no execution shall issue. That execution shall be stayed is an incident which the law attaches . . . during

the pendency of the appeal. Here there never was an appeal and the incident never did attach. The right to a stay of execution is purely statutory. The only authority for a stay is the provision that no appeal shall operate as a stay unless a supersedeas be given."

The manner in which an appeal is taken under the new procedure (1909) is provided for in section 569 of the code. (Gen. Stat. 1915, § 7473.)

"Appeals to the supreme court shall be taken by notice filed with the clerk of the trial court, stating that the party filing the same appeals from the judgment, order or decision complained of to the supreme court. . . . A copy of such notice must be personally served on all adverse parties whose rights are sought to be affected by the appeal. . . . or their attorneys of record."

The appeal is perfected by the filing of the notice with the clerk of the trial court, and from that moment the supreme court has jurisdiction. (*Schmuck v. Railway Co.*, 85 Kan. 447, 116 Pac. 818; *Thisler v. Little*, 86 Kan. 787, 121 Pac. 1123; *The State v. Roselli*, 106 Kan. 689, 189 Pac. 136.)

A notice of appeal was served upon the attorneys of Katherine Tackett, but no notice of appeal was ever filed with the clerk. The supersedeas bond was filed with the clerk. The statute further provides that no appeal from a money judgment "shall operate to stay execution unless the clerk of the court in which the record of such judgment or final order shall be, shall take a written undertaking, to be executed on the part of the appellant to the adverse party, . . . to the effect that the appellant will pay the condemnation money and costs in case the judgment or final order shall be affirmed in whole or in part." (Civ. Code, § 586; Gen. Stat. 1915, § 7490.) ·

Under the old "case-made" practice, which required several months before proceedings in error could be perfected, no one supposed that execution was stayed until the proceedings in error were complete and · the supreme court had acquired jurisdiction. A situation often arose by which, after notice had been given that an appeal was to be taken and after a supersedeas bond had been given and filed, the party appealing was obliged to procure an order of the district court staying execution until the appeal could be perfected. The order of the court staying proceedings made the bond effective and furnished a sufficient consideration for the bond, pending the appeal. Under the present practice, an attorney upon whom a notice of appeal has been served would naturally take for

granted that the paper handed him was a copy of an original filed with the clerk. Can it be said that in order to protect the interests of his client he is required to inspect the records in the clerk's office from day to day to discover whether the notice of appeal has been filed? Of course, he can avoid any uncertainty by making a single inquiry, and if he learns that the notice has not been filed he may cause execution to issue.

Numerous decisions by other courts are relied upon holding that the judgment is not suspended from the time of filing the bond and that there must be an appeal before it is suspended, and that until an appeal is actually taken there is no consideration for the bond. (See 4 C. J. 1268 and cases cited in the notes.)

In. *Land Co. v. Ansley,* 6 Tex. Civ. App. 185, it was said in the opinion:

"It is true that the plaintiff probably in deference to this bond did not have process issued for some time, but that can be attributed to his forbearance rather than to necessity." (187.)

To the same effect see *Inspiration Con. Copper Co. v. Mendez,* 19 Ariz. 151; *Ellis v. Hull et al.,* 23 Cal. 160; *Chase v. Beraud,* 29 Cal. 138; and see authorities cited in 2 Cyc. 932.

The same point was suggested in *Powell v. Bradley,* 86 Kan. 198, 119 Pac. 543, but not decided as it was not directly involved. It was held that a supersedeas bond is an essential part of the appeal, in all cases where it is sought to stay execution pending appeal. It was also said:

"The mere filing and approval of such bond where there has been no service of notice of appeal will not operate to stay execution upon the judgment. (Syl. ¶ 2.)

In the opinion it was said:

Suppose no appeal is taken within the year and no affirmance of the judgment obtained, might not the sureties urge that as a defense to an action on the bond?" (p. 200.)

In *Steele v. Crider,* 61 Fed. 484, there was an appeal from an Indian territorial court to the circuit court for the district of Kansas, and, the appeal not being authorized by law, the appeal bond was held invalid notwithstanding the fact that the appellee forebore to issue execution upon the appeal. It was said:

"The plaintiffs in the case in the territorial court could have sued out an execution." (p. 486.)

It was held there was no consideration for the bond.

It has been held that the obligors may inquire into the validity of an appeal for the purpose of relieving themselves of liability on their undertaking where the appellant derives no benefit from the invalid appeal. (4 C. J. 1270; *Brown v. The Mo. Pac. Ry. Co.,* 85 Mo. 123.) In *Mueller v. Rice,* 149 Wis. 548, 550, it was said:

"The advantage or delay which would have resulted from a valid appeal was never secured; hence there is no room for the application of the doctrine of estoppel laid down in the cases cited."

Manifestly, however, where the condition of the bond is in the alternative, and contains a condition to prosecute an appeal with effect or to secure a reversal of the judgment, the surety becomes liable to pay the judgment. Moreover, the courts have been quite liberal in construing what will constitute an affirmance. All that is necessary is that there be a substantial affirmance of the judgment.

The doctrine that if the appeal is not taken within the statutory time the supreme court acquires no jurisdiction and that the appeal bond thereby becomes void is opposed to the decision in *Cooperative Ass'n v. Rohl,* 32 Kan. 663, 5 Pac. 1, relied upon by the plaintiff. The case is not directly in point, but portions of the opinion have some bearing. The action was on a supersedeas bond, the defense being that the bond was without consideration. After the judgment in the district court in favor of plaintiff, he and defendant entered into an agreement by which defendant was not to take an appeal, plaintiff was not to issue execution prior to June 1, 1881 (which was a year and three days after the rendition of the judgment), and defendant agreed that within the year he would pay the judgment. No execution was issued, but the defendant not only failed to pay the judgment but thirty days after the year expired he instituted proceedings in error for a reversal of the judgment. The supersedeas bond was given to stay the judgment. Afterwards plaintiff moved to dismiss the proceedings in error in the supreme court for the reason that they were not instituted within one year after the rendition of the judgment, and for the further reason that Rohl had agreed to pay the judgment and costs. The proceedings were dismissed. In an action on the bond the surety set up the defense that the bond was void because it was more than a year after the rendition of the judgment before the appeal was taken, and when the defendant had no right to institute such proceedings. The court held that defendant had no right to institute proceedings in error at the time he did for two reasons: *first,* because more than a year had elapsed from

the rendition of the judgment; *second,* because he had agreed for sufficient consideration that he would not institute proceedings in error. It was held that, notwithstanding the fact that defendant had no right to take an appeal, that fact would not render the bond void. It was held, therefore, that there was sufficient consideration for the bond. In the course of the opinion, Judge Valentine said:

"The plaintiff had no right to ignore the proceedings in error. It was necessary for the plaintiff to appear in the supreme court and defend as to such proceedings; and in the meantime it would have been highly improper for the plaintiff to have had an execution issue to enforce such judgment."

The foregoing comment forms no real part of the decision, and to the writer hereof it seems that where an appeal has been taken after the time allowed by statute it may be wholly ignored by the judgment creditor and an execution might issue. It might happen that there was danger that the surety would become insolvent and that the only way the judgment creditor could be protected would be to have an execution issue before a motion to dismiss the appeal could be heard. There was in that case an appeal, although after the time in which a valid appeal could be taken.

Few cases are to be found in which the facts were identical with those in the present case. In many of them the supersedeas bond contained a recital to the effect that an appeal had been taken, thereby estopping the surety from asserting the contrary. It is apparent also that decisions in cases where the bond contained a condition that the principal would "prosecute the appeal with effect" furnish little aid in solving the problem here. It is suggested in defendant's brief that to hold this bond valid would permit a judgment debtor to connive with the judgment creditor to purchase a supersedeas bond, have it filed, with the express intention that no appeal should be taken, or that an appeal should be taken after the time allowed by statute which would be abortive, with the result that the judgment debt would be loaded upon an innocent surety company. The answer to this is that if such state of facts were shown it would establish fraud which would destroy the right of the principal in the bond to recover. (See 4 C. J. 1286, and cases cited in Note; *Ingersoll v. Seatoft,* 102 Wis. 476, 72 A. S. R. 892.)

While it has quite generally been held that one of the considerations for the bond is the chance that the appellate court might reverse or modify the judgment, which would inure to the benefit of

Tackett v. Guaranty Co.

the surety; the surety is deprived of this right in all those cases holding him liable where the appeal is defective, or where the appellant dismisses the appeal after it has been taken. Those decisions apparently disregard the fact that the surety may have lost something by the failure to have judgment rendered on the merits. The surety has no control over the taking, preparation or disposition of the appeal. In the absence of fraud or connivance between the appellant and the appellee, the surety ought to be held bound in case the appellant sees fit to compromise the judgment or for any reason to dismiss the appeal.

In *Peck v. Curlee Clothing Co.*, 63 Okla. 61, 162 Pac. 735, the supreme court of Oklahoma in construing the effect of a statute copied from our section 586 of the code, held that an order dismissing an appeal on the ground that it was filed out of time amounts to an affirmance of the judgment and constitutes a breach of a supersedeas bond. In the opinion it was said:

"By the making of the bond, its filing and approval, the surety stayed the hands of the judgment creditor, in so far as its right to issue execution in satisfaction of its judgment was concerned. In such circumstances the surety ought not to be permitted to escape the payment of his obligation, because of the subsequent neglect or failure of the principal to prosecute, within the statutory time, his proceedings in error. Any other conclusion would enable a financially embarrased creditor, by the giving and official approval of a supersedeas bond, and a failure to appeal, to dispose of his property and defeat a satisfaction of the judgment." (p. 63.)

(Citing *Illinois Surety Co. v. Hendrick*, 170 Ky. 347; *Coon v. McCormack et al.*, 69 Iowa, 539.)

The decisions which hold that the abandonment or dismissal of the appeal is the equivalent of an affirmance of the judgment are well supported by the reasoning upon which they are based. As early as 3 Illinois (2 Scam.), and long before surety companies were heard of, the supreme court of Illinois in an action on a supersedeas bond said:

"This court does not entertain a doubt but that the dismissal of an appeal or certiorari is equivalent to a regular technical affirmance of the judgment so as to entitle the party to claim a forfeiture of the bond and have his action therefor." (*McConnell v. Swailes*, 3 Ill. 571, 572.)

The bond given in that case was conditioned "to pay the debt and costs, in case the judgment shall be affirmed on the trial of the appeal," which is substantially the provision of the supersedeas bond under our statute. Proceeding further the supreme court of Illinois said:

"What is the object of this requirement and what its meaning and intention? Manifestly, to secure the opposite party in his debt and costs *in case the judgment shall not be reversed;* in case he shall be in the circuit court the successful party. By a dismissal of the appeal, either by the court, or by the act of the appellant himself, the appellee is the successful party; he has not lost what he gained before the magistrate. He is placed in the same situation he occupied before the appeal was taken; and we see no propriety in attributing to such a judgment of dismissal less efficacy than to a more formal and technical one of affirmance." (Italics ours.) (p. 572.)

We do not lose sight of the contention of the defendant in the instant case that no appeal was taken by the railways company, but the reasoning of the opinion cited and others from which we shall quote spell out the real intention of the parties in the execution and acceptance of the supersedeas bond. In *Coon v. McCormack,* supra, it was said:

"The word 'affirm' as used in the statute and bond, should not be construed in a narrow and strictly technical sense but a broad and comprehensive meaning should be attached thereto; that is to say, if the legal effect of the dismissal is to affirm the judgment, then the latter includes the former and both mean the same thing." (p. 540.)

It should be observed, however, that the opinion in this case conceded "that there may be cases where a dismissal would not amount to an affirmance, as when an appeal has not been perfected by the service of the requisite notice." The court in that case went as far as it was necessary to go on the facts before it to discover the reasonable intention of the parties to the bond. As we shall show, other courts have applied the same principle to cases where there had been no appeal perfected. We cite the Coon case for what it is worth, because it shows the disposition of modern courts to hold the surety notwithstanding the literal provision of the bond that he is to be liable in case of an affirmance of the judgment.

In a case where the bond was conditioned for the "prosecution of the appeal to effect and without unnecessary delay," and where no transcript was filed in the appellate court and no attempt made to perfect the appeal, it was held that the appeal deprived the appellee of the right to have his judgment satisfied by execution against the property of the judgment debtor, and the effect, if not the language of the promise of the surety, was to make good to the appellee his judgment if it should remain unreversed. (*Flannagan v. Cleveland,* 44 Neb. 58.) We cite the decision as one construing the obligation of the surety as a promise to satisfy the judgment if

Tackett v. Guaranty Co.

it should remain unreversed. Possibly the numerical weight of the authorities hold that if, after perfecting the appeal, it is dismissed by the appellant there is not such an affirmance as to make the surety liable. We think the weight of the reasoning of the modern cases is the other way.

The surety company in the instant case knew that it had no control over the appeal, and we think it is clear that the surety, the judgment debtor and the judgment creditor understood that the giving of the bond contemplated an appeal. Some things required by the statute to perfect an appeal and to stay proceedings were taken. The bond was executed, notice to the plaintiff in the action was given to the effect that the defendant appealed, and in our opinion it is only reasonable to say that the rights of the parties are no different than if an abortive appeal had been taken; that is to say, an appeal which, upon its face, was subject to dismissal, or in which some necessary step was taken too late to give the appellate court jurisdiction to do anything but dismiss the appeal.

In *Morgan v. Soisson,* 21 Pa. Sup. Ct. 141, it was held that failure to enter the appeal operated as an affirmance of the judgment appealed from so as to render the surety on the appeal bond liable. In that case the condition of the bond, as provided by the statute, was for the payment of the debt, interest and costs on the affirmance of the judgment. In answering the contention of the surety that the meaning of the word "affirm" should be confined to the ratification of the judgment by the appellate court, the superior court held that it had a much broader meaning than this, "and that the judgment could be affirmed either by the act of the appellant in failing to enter the appeal or by the formal action of the court; that such failure was an implied affirmance by the appellant of the judgment appealed from and bound it and the surety whose bond made an appeal possible, and, at least for the time, valid."

It was held in *Winchester v. Rich,* 40 Pa. Sup. Ct. 46, where the appeal was dismissed not for any defect in the bond but because of the failure of the appellants to perform a collateral act, that this constituted an affirmance of the judgment within the meaning of the appeal bond conditioned for payment of the debt on affirmance of the judgment in the appellate court.

In *Dunterman v. Storey,* 40 Neb. 447, more than a year had elapsed since the making of the last final order and judgment in the district court, and no bill of exceptions had been settled, and there

was no proceeding in error or appeal pending in the supreme court
at the time action was brought on the bond. It was held that the
surety having solemnly asserted in the bond that a transcript and
petition in error had been filed to obtain the reversal of the judg-
ment, was estopped from disputing the truth of that statement.
To that extent, of course, the case is not in point here. The court
said, however:

"It is true that the contract of a surety is to be construed strictly in his
favor but such a construction as the one contended for in this case would be
too technical. Bernhart promised that if the judgment rendered against
Dunterman should be affirmed in whole or part he would pay it. This was, in
effect, a promise on his part to pay the Storey judgment unless the supreme
court should reverse it. Bernhart cannot allege as a defense the failure of his
principal to successfully and properly prosecute his petition in error." (p. 453.)

Notwithstanding there was an admission in the bond that an ap-
peal had been taken, the reasoning of the court upon what is meant
by a promise to pay the judgment in case it should be affirmed was
not based upon that fact. In the course of the opinion the court
expressed disapproval of the old case of *Drummond v. Hussen,* 14
N. Y. 60, in which Selden, J., who delivered the opinion of the court,
held that "a dismissal of the appeal for want of posecution is clearly
not an affirmance of the judgment." (p. 61.) The Nebraska court
said in the opinion:

"This case from New York is in point; but we are constrained to say that
we do not think it sound." (p. 452.)

(Citing *McConnel v. Swailes,* 3 Scam. [Ill.] 571; *Sutherland et al.
v. Phelps,* 22 Ill. 91; *Clark v. Miles and another,* 2 Pinn. [Wis.] 432;
*Ellis v. Hull et al.,* 23 Cal. 160.) In the last case cited the California
court held that where an appeal is taken to the supreme court by
filing notice of an appeal and undertaking, and the appeal is after-
wards dismissed, by the supreme court for failure of the appellant
to send up a transcript, the sureties are liable on the supersedeas
bond.

We think that the abandonment of the appeal under the circum-
stances of the present case had the same effect on the liability of
the surety as if an appeal had been actually instituted by filing the
original notice with the clerk of the trial court and subsequently
dismissing without a trial upon the merits in the supreme court be-
cause of the failure of the railways company to comply with some
requirement necessary to review the case on its merits; the same as
if under the old procedure the appellant had neglected to cause a

Tackett v. Guaranty Co.

summons in error to be issued within one year from the rendition of the judgment. In such a case the surety would have been deprived of the right to have the case tried upon its merits which the surety is presumed to have contemplated as a consideration for the bond when it was executed. In other words, in the contemplation of the parties, the surety in this case was obligated to pay the judgment unless it was reversed. This seems reasonable and fair to all the parties when we consider that the surety has no control over the taking of the appeal, and that he executes the bond, contemplating that his principal will take care of the appeal; and yet, as we have seen, many things may occur which will render the attempt to take an appeal of no account whatever.

In *First State Bank v. V. E. Stevens Land Co.*, 119 Minn. 209, the supreme court of Minnesota held a stipulation for an affirmance of an order or judgment appealed from, made in good faith, does not release the surety on the appeal bond. The opinion referred to the authorities holding that an affirmance of the appeal by active consent of the litigants releases the surety because it precludes the happening of the implied condition precedent to liability on the bond; namely, that the appeal shall be heard on its merits; and cases holding that by stipulating for affirmance of the appeal a condition not contemplated is added to the contract of the surety and he is released; and that the surety in assuming the contract has a right to rely on the chance that he will be relieved from liability if the appellate court considers the appeal on its merits. The Minnesota court said:

"We are however, not inclined to the views taken in the foregoing decisions. The surety on an appeal bond has no voice in the conduct of the litigation, nor any interest in the matters involved. It is understood that the appeal is for the sole benefit of the principal in the bond. He alone has the right to carry on or terminate the appeal in the manner he chooses, if not prevented by his adversary or the court. Therefore, if at any time he concludes that continuing the litigation will be of no advantage to him, or will entail useless expense, he should have the right to stipulate for an·affirmance or dismissal of the appeal without thereby releasing the surety on the bond. All authorities are agreed that intentional neglect of an appellant to take the steps necessary for a consideration of the appeal on the merits does not affect the liability of the surety on the appeal bond. And what is such neglect but doing by indirection what was here accomplished by the stipulation? We are of opinion that the right of a litigant to terminate litigation, and which should be favored by courts, is an incident annexed to bonds on appeal, so that when this right is exercised in good faith it does not in any wise release the surety

on the bond. We do not here consider a case where the parties have colluded to work a fraud on a surety, for the stipulation for affirmance appears to have been prompted by a laudable desire to avoid certain defeat for one of the parties and needless trouble and expense for the other. As supporting the rule we adopt, see *Chase v. Beraud,* 29 Cal. 138; *Drake v. Smythe,* 44 Iowa, 410; *Ammons v. Whitehead,* 31 Miss. 99; *Bailey v. Rosenthal,* 56 Mo. 385; *Howell v. Alma,* 36 Neb. 80." (p. 213.)

It must be conceded that the books are full of cases to the contrary: See *Hill v. Keller,* 157 Mo. App. 710-717. The opinion in that case quotes the supreme court of Ohio in *State v. Medary,* 17 Ohio St. 565, where the old rule was applied in its strictness, and it was said: "There is no construction against sureties."

We have no doubt that our conclusion in the present case would have startled the legal profession forty years ago, when the rights of a surety were guarded by all courts with the most jealous care and his contract construed with utmost strictness in his favor.

We hold that the demurrer was properly sustained to that part of the answer which set up as a defense the failure to perfect an appeal.

As the defendant was bound by the obligation, it is unnecessary to consider the other defense upon which the court directed verdict in favor of the plaintiff, and which raised the question of an arrangement entered into between Katherine Tackett and the railways company by which payments were to be made upon the judgment from time to time. It may be said, however, that the payments upon the judgment inured to the benefit of the surety and reduced its liability to the extent of $6,000.

It is conceded by the plaintiff that there was a mistake in entering the judgment and that it should be reduced in the sum of $500.

The judgment will be modified to that extent, and as modified, affirmed.