BOLINGER-FRANKLIN LUMBER CO., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 8077.    Promulgated June 17, 1927.

1. At organization, petitioner issued certain certificates designated
"Class A Preferred Stock" and "Class B Preferred Stock"
respectively. On the facts, *held* that the Class A certificates were
in effect certificates of indebtedness, representing borrowed capital,
and may not be included in invested capital for tax purposes. The
Class B certificates were certificates of stock, and constituted a
part of the capital structure of petitioner.

2. Certificates of preferred stock and certificates of indebtedness
distinguished.

*W. W. Spalding, Esq.,* for the petitioner.
*J. Harry Byrne, Esq.,* for the respondent.

This is a proceeding for the redetermination of deficiencies in
income and profits taxes for the calendar years 1918 and 1919 in
the amounts of $16,156.66 and $5,277.73, respectively, a total of
$21,434.39. The material facts were stipulated, and the only issue
raised by the pleadings herein is one of law, namely, whether certain
certificates designated Class A and Class B preferred stock consti-
tuted invested capital or borrowed capital.

### FINDINGS OF FACT.

Petitioner is a Delaware corporation, organized in December,
1917, with its principal office at Zama, Miss. It succeeded a Missis-
sippi corporation of the same name, which had theretofore operated
a saw mill, built and owned by it. This predecessor corporation
obtained its timber from the Winston Land & Timber Co., also a
Mississippi corporation, under a contract which provided for the
payment to the latter company of $3.50 per 1,000 feet for all
timber cut.

Because of financial difficulties in carrying on its operations, the
officers and principal stockholders of the old Mississippi saw mill cor-
poration began negotiations with the Winston Company with a view
to the reorganization and refinancing of the saw mill company.
These negotiations resulted in an agreement to organize a new cor-
poration under the laws of Delaware to take over the assets of the
saw mill company and the timber of the Winston Company. It was
agreed that the new corporation should issue, for the assets to be thus
acquired, three classes of stock as follows: 3,000 shares of common
stock, without nominal or par value; 5,000 shares of Class A preferred
stock, of a total par value of $500,000, or $100 per share; and 1,500
shares of Class B preferred stock, having a total par value of $150,000

or $100 per share. It was further agreed that the value of the Winston Company's timber, on the basis of $3.50 per 1,000 feet, was $500,000, and that the Class A preferred stock in that amount should be issued therefor. It was also agreed that the value of the saw mill was $150,000, and that the Class B preferred stock in that amount should be issued therefor. Pursuant to this agreement, petitioner was organized, and the different classes of so-called stock, designated as above set out, were duly issued in January, 1918.

The common stock was apportioned equally to the Winston Company and the old saw mill company, with the exception of 40 shares which were sold on the open market at $100 per share. All of the so-called Class A preferred stock was issued to the Winston Company for its timber, and all of the so-called Class B preferred stock was issued to the old saw mill company for its assets.

Petitioner's charter provided in paragraph six, with respect to capital stock as follows:

The capital stock of this company shall be:

A. 3,000 shares of common stock, without nominal or par value, which may be issued by the corporation from time to time for such consideration as may be fixed from time to time by the Board of Directors.

B. 5,000 shares of preferred stock, Class A, each share to be of a par value of one hundred dollars ($100), and each of said shares shall make express reference to the terms herein contained and shall be retired out of the payments to be made by this corporation upon the basis of Three and 50/100 ($3.50) Dollars per thousand feet, for each thousand feet of timber actually cut and/or sold. Payment to be made on the first Three and 50/100 ($3.50) Dollars per thousand feet, collected out of the purchase price, but not before, when any timber is sold on credit.

When said Corporation shall sell or cut any timber, it will forthwith (except upon sales on credit and then as above provided) set aside and deposit said Three and 50/100 Dollars ($3.50) until said sum shall aggregate Five Thousand Dollars ($5,000) when it shall be distributed, without preference or priority, to and among said several shares credited in Class "A." Should there be a failure for as much as two months upon the part of said Corporation to set aside Three and 50/100 Dollars ($3.50) per thousand feet upon the amount of timber cut, then said shareholders of Class "A" can, at their election, elect an executive committee who shall be vested with the management and control of said Corporation. The said Corporation for the benefit of said Class "A" Preferred Shares binds itself to cut an average of eighteen million feet log scale annually, but it shall cut sufficient to pay for at least one million feet per month, in accordance with the provisions of this section, unless the price of manufactured lumber should fall below an average of Twelve Dollars per thousand feet, f. o. b. cars as shown by the monthly statement of said Corporation, when said Corporation shall have the right to cease operation until such time as the market will yield an average of Twelve Dollars or more per thousand feet, and all timber payments hereunder made shall likewise cease until operations are resumed, and the annual cut required for the benefit of said Class "A" Preferred Stock shall be proportionately reduced, and said holders of Class "A" Preferred Stock, or any of them, shall have free access to the books and papers of said Corporation at

all reasonable times and may have them audited whenever said Class "A" Shareholders, or any of them, deem necessary, by paying the expenses of so doing. But said Corporation shall furnish to a representative of Class A share-holders a monthly and an annual statement of its affairs. Or said Corporation may cease cutting because of (a) strikes; (b) the act of God; (c) the public enemy; (d) car shortage, with the same effect as hereinbefore provided. Said Class "A" shall be preferred and constitute a preferred claim in, to and against the timber owned by said Corporation until all of said shares shall have been fully retired.

C. 1,500 shares of the par value of $100 of Class B preferred which shall be retired at par, when, if and as the earnings of said Corporation shall permit. But said Class "B" shall be fully retired before the Common Shares are entitled to any dividend distribution or declared benefit. And said Class "B" shares until retired shall have preference and priority in, to and against the assets of said Company other than the timber. Said stock shall be retired by dividends to be paid in amounts of not less than Five Thousand Dollars ($5,000) at one time, and may be paid at such times as said Directors may from time to time determine. Said preferred stock, Class "A," shall be retired in full from the timber, and if more than sufficient to retire said Class "A" then the residue shall be applied to retiring Class "B" Preferred before the Common Stock shall be entitled to receive any distribution whatever, except that when Class "B" shall have been retired, dividends may be paid upon said Common Shares, provided there is no default in the payments required to be made upon Class "A." All voting power shall be vested in the holders of Common Stock.

The rights of the Preferred Shares issued and to be issued shall not be divested without the unanimous consent obtained from every shareholder of stock issued and outstanding.

The Class A and Class B certificates were the same in form, except for appropriate changes in designation, and both classes contained identically the same provisions. Class A certificates read as follows:

No. ——— Incorporated under the Laws of Delaware ——— Shares

BOLINGER-FRANKLIN LUMBER COMPANY, INC.

Common Stock, 3,000 Shares No Par Value.
Class "A" Preferred Stock $500,000. Class "B" Preferred Stock $150,000.
Class "A" Preferred Stock. Shares $100 Each.
This is to certify that ——— ——— is the owner of ——— Shares of the CLASS "A" PREFERRED Capital Stock of BOLINGER-FRANKLIN LUMBER COMPANY, INC., transferable only on the books of the Corporation by the holder thereof, in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

Each certificate then set forth at length the provisions of paragraph six of the charter, hereinabove set out in subparagraphs B and C, and concluded with the following:

In case a default shall be made in the payment of the principal or interest upon any bonds of this Corporation, secured by mortgage that may be from time to time issued and such default continue for a period of Thirty (30) days and/or in case of the appointment of a Receiver of this Corporation and/or in case of a judgment of forfeiture of franchise, ouster or liquidation and/or in

case of the judicial ascertainment of the violation of any law, State or Federal by this Company and/or in case of an adjudication in bankruptcy, then, at once the rights of both Common and Preferred Shareholders shall cease and determine and the sole right to elect Directors and manage, direct, and/or control this Corporation may be vested in the holders of the Mortgage Bonds that may be then outstanding—each bond to have an equal right with every other bond in such voting—together with right of cumulative voting in the election of Directors as now provided by law. This power shall continue until all of said bonds shall have been paid or discharged or until voluntarily relinquished by a majority vote of the bonds then issued and outstanding.

WITNESS the seal of the Corporation and the signature of its duly authorized officers affixed this —— day of ——— 19—.

Subsequent to the issuance of the certificates designated as Class A preferred stock, the amount of $10,040.90 thereof was retired, leaving a balance of $489,959.10 of Class A and $150,000 of Class B, outstanding during the taxable years in question, or a total outstanding balance of $639,959.10.

## OPINION.

TRAMMELL: The material facts pertinent to the issue in this proceeding are not in dispute. Shortly after its organization petitioner issued certificates in the amount of $500,000 which it denominated " Class A Preferred Stock," and thereafter retired the amount of $10,040.90 thereof, leaving outstanding during the taxable years here involved, the amount of $489,959.10. At the same time, it issued other certificates in the amount of $150,000, which it designated " Class B Preferred Stock." Petitioner contends that these certificates represented invested capital, as defined in section 326 (a) of the Revenue Act of 1918, and that in the computation of its invested capital for the taxable years 1918 and 1919, it is entitled to have included therein the total outstanding balance of $639,959.10. Respondent contends that the certificates in question represented borrowed capital, and that under the express provisions of section 326 (b) of the Revenue Act of 1918, the entire amount must be excluded from invested capital. A single issue of law is thus raised for consideration here.

Were these certificates, when issued, certificates of stock in fact or were they in effect certificates of indebtedness? Petitioner designated them as " Class A Preferred Stock " and " Class B Preferred Stock " respectively, and as we said in the *Appeal of Kentucky River Coal Corporation*, 3 B. T. A. 644, it is not lightly to be assumed that parties have given an erroneous name to their transaction. However, it is well settled that mere designation can not, in the last analysis, be a controlling factor in the determination of the true nature of an instrument. In the *Appeal of I. Unterberg & Co.*, 2 B. T. A. 274, we held that the name by which an instrument is denominated, either on its face or on a corporation's books, is not conclusive as to its

character, and that its true nature will be determined by looking to its terms and legal effect. A mortgage creditor, although denominated a " preferred stockholder " is a mortgage creditor nevertheless, and interest is not changed into a " dividend " by calling it a dividend. *Burt* v. *Rattle*, 31 Ohio St. 116. Again, the Supreme Court of Ohio, in considering a similar situation, said: " ' The question is not, what did the parties call it, but what do the facts and circumstances require the Court to call it? ' " *Miller* v. *Ratterman*, 47 Ohio St. 141; 24 N. E. 496. We must, therefore, in order to determine the true character of these certificates, examine into the terms of the contracts under which they were issued, and consider the legal effects flowing therefrom. Since it appears that the contracts are materially different, the two classes of certificates will be discussed in their alphabetical order.

The holder of a corporation's stock, whether common or preferred, can not by virtue of the ownership of such stock, be a creditor of the corporation. He can not be both a creditor and a debtor. And so the holders of the certificates under consideration were either stockholders of the corporation or creditors. This leads us then to inquire first into the fundamental difference between a stockholder and a creditor, or between certificates of stock and certificates of indebtedness. Obviously the difference lies in the relationships existing between the holders of the certificates and the corporation, which are fixed by the terms of the certificates or the contracts under which they are issued. A stockholder of a corporation is one who has invested money or money's worth in the enterprise, with hope or expectation of receiving income or profit from the operations of the company. If the venture be successful, he receives his proportionate part of the profit; otherwise, he may lose the amount of his investment represented by the certificates of stock. A creditor of a corporation is one who has loaned to it money or its equivalent, usually for compensation or interest, at a fixed rate, to be repaid at a designated time or in a designated manner. The creditor is in no wise concerned in the profits of the corporation or its property. If it prospers, he is not benefited thereby, and if it suffers a loss, he is still entitled to the return of his loan in accordance with the contract. The stockholder risks his money in the enterprise. The creditor assumes no such risk.

In *Warren* v. *King*, 108 U. S. 389, the Supreme Court said, at page 399:

Creditors may resort to the body of their debtor's property for interest as well as principal. But these holders of preferred stock are limited, for any income or interest, to net earnings.

\* \* \* \* \* \* \*

His [the stockholder's] chance of gain, by the operations of the corporation, throws on him, as respects creditors, the entire risk of the loss of his share

of the capital, which must go to satisfy the creditors in case of misfortune. He can not be both creditor and debtor, by virtue of his ownership of stock.

In *Miller* v. *Ratterman, supra,* the Supreme Court of Ohio states the difference between a preferred stockholder and a creditor as follows:

The question in the case is whether the certificates are certificates of stock or certificates of indebtedness. * * *

The relation of a holder of preferred stock is, in some of its aspects, similar to that of a creditor; but he is not a creditor save as to dividends, after the same are declared. Nor does he sustain a dual relation to the corporation. He is either a stockholder or a creditor. He cannot, by virtue of the same certificate, be both. If the former, he takes a risk in the concerns of the company, not only as to dividends and a proportion of assets on the dissolution of the company, but as to statutory liability for debts in case the corporation becomes insolvent. If the latter, he takes no interest in the company's affairs, is not concerned in its property or profits as such, but his whole right is to receive agreed compensation for the use of the money he furnishes, and the return of the principal when due. Whether he is the one or the other depends upon the proper construction of the contract he holds with the company.

What is preferred stock? By preferred stock is to be understood stock which entitles the holder to receive dividends from the earnings of the company before the common stock is paid a dividend from such earnings. In other words, it is stock entitled to dividends from the income or earnings of the corporation before any other dividend is paid. Cook on Corporations, 8th ed. vol. 1, § 267.

When the principles above set forth are applied to the provisions of the contract embodied in and under which the Class A certificates were issued, it is at once apparent that they are not, as they purport to be, certificates of preferred stock, but are in effect certificates of indebtedness. The holders of those certificates were absolutely and at all events entitled to have returned to them the total sum of $500,000, to be paid in sums of $5,000, at the rate of $3.50 for each 1,000 feet of timber sold or cut, and the corporation obligated itself to cut sufficient timber to pay for at least one million feet per month, subject only to the happening of certain contingencies beyond the control of the corporation. And it was further provided that should there be a failure for as much as two months upon the part of the corporation to set aside the sum of $3.50 for payment to the holders of such certificates, the holders might assume control of the corporation, a right frequently granted to bondholders similarly circumstanced. The holders of these Class A certificates, as such, had no interest in the profits of the corporation or in its property, as such. If the corporation made large profits, or no profit, or suffered a loss, it did not affect their rights, which were restricted to the payment to them of the amount of money stated, and in the manner set out, in

108346°—28——29

the contract. They risked nothing thereby in the business ventures of the corporation. They assumed no risk not assumed by an ordinary creditor, and the payment of the money was not required to be made out of the income or profit, but the sum of $3.50 was to be paid for each 1,000 feet of timber sold or cut until the full amount of the certificates had been refunded.

But it is argued by the petitioner that, because the rights of the certificate holders were subordinated to those of the holders of mortgage bonds, this determined the status of the former as preferred stockholders. While it is true that this is an attribute of preferred stock, imputed by law, whether or not expressly provided by contract, it is also a provision often applied to issues of bonds, whereby one issue or series of bonds is given preference over another. The legal effect of such a provision in the case of bonds is merely to create a restricted indebtedness. This question was before us in the *Appeal of I. Unterberg & Co., supra*, in connection with which we said:

Examining the terms and effect of the instrument, we are unable to hold it to be a certificate of stock. It is evidence of a restricted indebtedness. The fact that the principal amount is subordinated to the claims of general business creditors is not sufficient to warrant this Board's determination that it is stock for the purpose of invested capital * * *.

Applying the principle of invested capital, it is questionable whether these amounts were in fact risked in the enterprise. They were payable at maturity, subject to the claims of general creditors. They were an obligation of the corporation, enforcible in all respects except that the general creditors might insist that the assets should not be impaired below the amount of their claims. They were of a lower degree than such claims, and yet fixed in amount and time so as to distinguish them from stock * * *.

We hold the instruments in question to represent borrowed capital, and hence that the amount thereof may not be included in invested capital.

It is our opinion that the certificates herein designated by the petitioner as " Class A Preferred Stock " were in the nature of certificates of indebtedness, which represented borrowed capital, and may not therefore be included in its invested capital under section 326 (b) of the Revenue Act of 1918. Accordingly, the action of respondent in excluding said certificates to the amount of $489,959.10 is approved.

An examination of the provisions of the contract relating to the Class B certificates discloses that they possessed all of the essential qualities of preferred stock. The fact that both the Class A and Class B certificates contained no provision for the payment either of interest or preferred dividends is not material in determining whether they represented invested or borrowed capital for tax purposes. The contract provided that the Class B certificates should be retired at par when, if and as the earnings of said corporation should permit, but prior to any dividend distribution or declared benefit on common shares. It further provided that said certificates should be retired by dividends to be paid in amounts of not less than $5,000 at

one time, and should be paid from time to time as the directors might determine. Thus, it is clear that if the corporation had no net income or earnings out of which dividends could be declared, the holders of the Class B certificates. would receive no payments, since no other provision therefor was made, with the exception that after the Class A certificates had been fully retired from the timber, the residue of the proceeds, if any, from that asset, might be applied to retiring the Class B certificates. This, however, was also a contingency. The holders of the Class B certificates were not entitled at all events to the return of the amount represented by the certificates, either within a definite time or in a designated manner free of contingencies. The return of their money was dependent upon the success of the enterprise. We conclude, therefore, that the Class B certificates represented shares of preferred stock, which may properly be regarded as a part of the capital structure of petitioner. The amount of these certificates in the sum of $150,000 should be reflected in the computation of petitioner's invested capital for each of the years involved herein. The action of respondent in excluding the Class B certificates from the invested capital of petitioner is disapproved.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

MILLIKEN did not participate.

ARUNDELL, PHILLIPS, SMITH and TRUSSELL dissent.