**HELVERING, Com'r of Internal Revenue, v. RICHMOND, F. & P. R. CO.**

**No. 4115.**

Circuit Court of Appeals, Fourth Circuit.

June 14, 1937.

Berryman Green, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

E. Randolph Williams, of Richmond, Va., for respondent.

Before PARKER and NORTHCOTT, Circuit Judges, and HARRY E. WATKINS, District Judge.

PARKER, Circuit Judge.

This is a petition by the Commissioner of Internal Revenue to review a decision of the Board of Tax Appeals relating to the 1929 income tax of the Richmond, Fredericksburg & Potomac Railroad Company. The question involved is the right of the taxpayer to a deduction on account of guaranteed "dividends" paid during the tax year on certain guaranteed stock, which constituted a first lien on taxpayer's assets both with respect to the principal amount of the stock and the guaranteed dividends. On $481,000 of this preferred stock, dividends had been guaranteed at the rate of 7 per cent. and on $19,300 at 6 per cent. per annum. Taxpayer during the taxable year paid dividends under this guaranty in the amount of $34,835. It paid on the same stock an additional sum of $25,213, to bring the dividends up to 12 per cent. which was the amount of the dividend paid to the holders of its ordinary common stock. The Board disallowed the $25,213 as a deduction, holding that it occupied the status of an ordinary dividend, but allowed the $34,835, holding that this was in effect interest paid on an outstanding indebtedness of the company, for which deduction was allowable under section 23(b) of the Revenue Act of 1928, 45 Stat. 791, 799 (26 U.S.C.A. § 23(b) and note). Only the action of the Board with respect to the $34,835 item of "guaranteed dividends" is challenged.

The "guaranteed stock" upon which the "guaranteed dividends" were paid is of anomalous character. It was issued pursuant to acts of the General Assembly of

Virginia of February 13, 1856, and of December 13, 1865, and partakes of the nature both of capital stock and of bonded indebtedness. It participates with the other stock of the company in the division of the net earnings and has the same voting power; but the guaranteed dividends of 6 or 7 per cent., respectively, are payable, whether earned or not, out of general assets as well as out of earnings. These dividends, moreover, together with the principal of the "stock," constitute a first lien on the assets of taxpayer, taking priority not only over general creditors but also over the holders of corporate bonds. No maturity date is fixed upon which the investment in the guaranteed stock must be retired so long as the guaranteed dividends are paid; but, upon default in the payment of these dividends, the principal amount of the stock as well as the dividends becomes a debt of the company, and the mortgage securing the stock and dividends is subject to foreclosure, upon which the amount of the stock, as well as the unpaid dividends, is payable from the proceeds. Moreover, while the guaranteed stock shares ratably with other stock in dividends declared from earnings, only the guaranteed rate is payable in any event and constitutes a lien upon assets; and, in the event of foreclosure of the mortgage, the holder of the guaranteed stock is entitled to receive only the amount of the stock and the guaranteed dividends which have accrued.

The history of this guaranteed stock is set forth at length and the rights incident thereto are fully described in the case of Gordon's Executors v. Richmond, F. & P. R. Co., 78 Va. 501, in which the right of the holders to participate in dividends in excess of the guaranteed amount was upheld. The leading case as to the validity of a provision giving such stock a lien on assets where authorized by state law is Heller v. National Marine Bank, 89 Md. 602, 43 A. 800, 801, 45 L.R.A. 438, 73 Am.St.Rep. 212, in which the Court of Appeals of Maryland, in a learned opinion by Chief Judge McSherry, points out that such stock evidences in reality a mortgage indebtedness of the corporation, and that the rights of the holders thereof are to be determined, not from a consideration of the ordinary incidents of preferred stock, but from an examination of the provisions of the statute or contract under which such stock has been issued, saying: "Calling stock preferred stock does not per se define the rights in such stock, but these depend on the statute or contract under which it was issued. Elkins v. Camden & A. R. Co., 36 N.J.Eq. 233. As said by the supreme court of Ohio: 'To call a thing a wrong name does not change its nature. A mortgage creditor, although denominated a "preferred stockholder," is a mortgage creditor nevertheless; and interest is not changed into a "dividend" by calling it a dividend. Nothing is more common, in the construction of statutes and contracts, than for the court to correct such self-evident misnomers by supplying the proper words. To use the language of the court in Corcoran v. Powers, 6 Ohio St. 19: "The question in such cases is not, what did the parties call it? but, what do the facts and circumstances require the court to call it?"' Burt v. Rattle, 31 Ohio St. 116. Courts are not influenced by mere names. They look beyond these, and give to the subject dealt with the character—the status—which its properties denote it possesses. The qualities and properties of a thing are its essentials. They define and mark what it is. The name is purely accidental. It is no part of the thing named. If, then, the thing which the statute contemplates possesses the characteristics and qualities of preferred stock, and possesses none other, it is preferred stock; but if, on the other hand, it possesses characteristics and qualities that are entirely foreign to preferred stock, as strictly defined, and that are descriptive of something else, then the thing is obviously either not ordinary preferred stock, or not preferred stock at all, even though it be called preferred stock, and have, in addition to its own qualities, some of the characteristics that do pertain to preferred stock. Precisely because preferred stock has no lien on the company's property, and cannot be repaid in advance of general creditors, it is necessarily true that a security which is, by express and emphatic legislative enactment, entitled to just such a lien and just such a priority, is not preferred stock, technically speaking, though called by that name, and though having many features incident to preferred stock."

The question which arises for our determination is whether the guaranteed dividends paid by the taxpayer on the guaranteed stock were in truth dividends or whether they were in reality payments of interest on secured indebtedness; and this question must be answered, as said by Judge McSherry, by a consideration, not of the names which the parties have used to de-

scribe the interest given to the holders of the guaranteed stock, but of the nature and incidents of that stock and of the rights pertaining thereto. The essential difference between a "stockholder" and a "creditor" is that the stockholder intends to embark upon the corporate adventure, taking the risks of loss attendent upon it that he may enjoy the chances of profit. The creditor, on the other hand, does not intend to take such risks so far as they may be avoided but merely to lend his capital to others who do intend to take them. Warren v. King, 108 U.S. 389, 399, 2 S.Ct. 789, 27 L.Ed. 769. While no comprehensive rule may be laid down for distinguishing in all cases between an investment in a corporation and a loan to it, one of the most important considerations is whether the right to share in the assets of the corporation in case of dissolution is subject to the rights of creditors. If subject to such right, there is a strong presumption that the interest in question is that of a stockholder. See Heller v. National Marine Bank, supra. If it is not subject to such right, or if, as here, it is preferred over the right, the status of a creditor rather than of a stockholder is indicated. This is recognized by Treasury Regulations 45, art. 812, which provides: "Art. 812. Borrowed Capital: Securities.— Any interest in a corporation represented by bonds, debentures, or other securities, by whatever name called, including so-called preferred stock, if with respect to the payment of either interest or principal it ranks with or prior to the interest of the general creditors, is borrowed capital and cannot be included in computing invested capital. Any such preferred stock may, however, be so included if it is deferred with respect to the payment of both interest and principal to the interest of the general creditors."

In the case at bar, not only does the guaranteed stock rank prior to the interest of general creditors, but also prior to the interest of other secured creditors. The so-called guaranteed dividends are debts to be paid when due, whether there are net earnings out of which they may be paid or not; and, if there be default in paying them as guaranteed, the lien on the assets can be foreclosed and the principal as well as the guaranteed dividends paid from the proceeds, in advance of all other creditors. It is to be borne in mind that this is not the case of a dividend guaranteed by a third party which, like other dividends, is payable only from earnings. It is guaranteed by a pledge of the taxpayer's own assets, and, if not earned, its payment results in the depletion of those assets just as does the payment of any other debt. So long as the dividends are paid when due, the principal is not withdrawn, but, upon default in payment of these, it too becomes payable out of assets. Thus the principal of this secured stock not only is not risked upon the enterprise along with the investment of other stockholders, but it is given a preferential lien upon the assets over the claims of all other creditors, secured as well as unsecured.

The fact that the principal of the guaranteed stock is not demandable by the stockholder in the absence of default in the payment of the guaranteed dividends is not conclusive of a stock investment. In the light of the other attributes of the stock, this indicates rather a debt as to which there is a right of renewal so long as the interest is paid when due. There is nothing in the fact that the debt evidenced by the preferred stock is not payable at a fixed time which throws upon the holders thereof any of the risks with respect to the corporate enterprise which are characteristic of the position of the stockholder. On the contrary, the security required for principal as well as for dividends and the provision that, upon default in payment of guaranteed dividends, the mortgage securing same shall be foreclosed and principal as well as dividends paid from the proceeds, effectually negative the existence of such risks.

Nor does the fact that the guaranteed stock shares in the profits of the corporation above the guaranteed dividends, if these are exceeded by the ordinary stock dividends, and that it has a vote in the management of the corporation, detract from its position as secured indebtedness. These incidents of stock ownership were doubtless added to the ordinary rights of a secured creditor for the purpose of making the loan attractive; but a bond does not cease to be a bond merely because a share of stock is issued with it, and if the law, as did the law of Virginia, permits some rights of a stockholder to be included in an instrument evidencing a secured debt, the rights of the creditor are not impaired by so including them.

This guaranteed stock, then, while sui generis, is, in the light of all its attributes,

nothing more than a secured debt which is not to be repaid so long as the interest payments thereon are met when due, and which entitles the lender, in addition to interest, to participate with the stockholders in the earnings and management of the business. And the guaranteed dividends paid on such stock differ in no particular from interest paid on a secured debt, and should be treated as such as a matter of corporate financing and for income tax purposes.

As said in Fletcher, Cyclopedia of Corporations, vol. 6, p. 6014: "If authorized by its charter or by statute, a corporation may, in order to raise money, issue certificates in the form of certificates of preferred stock, so-called, as security, making the holders creditors of the corporation, instead of mere stockholders, and even giving them a lien upon the property of the corporation, which will be superior to the rights of subsequent creditors or mortgagees. Such stock, of course, is not ordinarily preferred stock, nor, technically, is it preferred stock at all, and therefore it is not governed by the ordinary rules. It is sui generis, and the rights of the holders are determined by the statute."

A case very much in point is Com'r of Int. Rev. v. Proctor Shop (C.C.A.9th) 82 F.(2d) 792, 793, wherein it appeared that "debenture preference stock" was issued, upon which "cumulative interest" was payable and which was given a preference over other stockholders in the event of the dissolution of the corporation. In holding that "interest" paid on this debenture preference stock was deductible as interest paid on indebtedness of the corporation, the court quoted with approval the following language of the Board, viz.: "None of the decided cases lay down any comprehensive rule by which the question presented may be decided in all cases, and 'the decision in each case turns upon the facts of that case.' * * * In each case it must be determined whether the real transaction was that of an investment in the corporation or a loan to it. On this 'the designation of the instrument issued by the corporation, while not to be ignored, is not conclusive. * * * The real intention of the parties is to be sought and in order to establish it evidence aliunde the contract is admissible. * * * If the evidence establishes 'that

dividends paid are, according to the intent of the parties in fact interest, and the stock on which the dividends are paid is merely held by the creditor as security, it makes no difference what the reason was for paying it in that form.' "

See, also, Com'r of Int. Rev. v. O. P. P. Holding Corp. (C.C.A.2d) 76 F.(2d) 11; Elko Lamoille Power Co. v. Com'r (C.C.A. 9th) 50 F.(2d) 595; Wiggin Terminals, Inc. v. United States (C.C.A.1st) 36 F.(2d) 893; Arthur R. Jones Syndicate v. Com'r (C.C. A.7th) 23 F.(2d) 833; Bolinger-Franklin Lumber Co. v. Com'r, 7 B.T.A. 402; H. R. De Milt Co. v. Com'r, 7 B.T.A. 7.

While not controlling upon us, it is worthy of note that this guaranteed stock has uniformly been treated both by the taxpayer and by the Revenue Department of the Government as an outstanding indebtedness, that as such it has been excluded from invested capital for the purpose of computing the excess profits tax, and that the guaranteed dividends have been treated as interest payments on borrowed money and not as ordinary dividends. Thus it appears from the record that the stock was carried on taxpayer's balance sheet as "long term debt" (Record 46). It was excluded from invested capital in the years 1918 and 1919, when excess profits taxes were involved (Record 46). In 1923 the Committee on Appeals and Review in the Revenue Department ruled with respect to the 1918 tax return that the guaranteed dividends should be treated as interest paid and allowed as a deduction (Record 56 and 57); and this ruling was accepted by the Department and the dividends were allowed as deductions for all the years from 1918 to 1928 inclusive, or until this controversy was raised with respect to the 1929 taxes (Record 46). Such a ruling, acquiesced in over so long a period, is certainly entitled to much weight as a contemporaneous construction of the Regulations of the Department by responsible officials charged with their administration. Brewster v. Gage, 280 U.S. 327, 336, 50 S.Ct. 115, 117, 74 L.Ed. 457; Swendig v. Washington Water Power Co., 265 U.S. 322, 331, 44 S.Ct. 496, 498, 68 L.Ed. 1036; Logan v. Davis, 233 U.S. 613, 627, 34 S.Ct. 685, 58 L.Ed. 1121.

The decision of the Board of Tax Appeals will be affirmed.

Affirmed.