## WARREN & Others *v.* KING & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

Decided May. 7th, 1883.

*Preferred Stock—Railroads.*

Certificates of preferred stock of the Ohio and Mississippi Railway Company were issued, containing the following language : "The preferred stock is to be and remain a first claim upon the property of the company after its indebtedness, and the holder thereof shall be entitled to receive from the net earnings of the company seven per cent. per annum, payable semi-annually, and to have such interest paid in full, for each and every year, before any payment of dividend upon the common stock ; and whenever the net earnings of the corporation which shall be applied in payment of interest on the preferred stock and of dividends on the common stock shall be more than sufficient to pay both said interest of seven per cent. on the preferred stock in full, and seven per cent. dividend upon the common stock, for the year in which said net earnings are so applied, then the excess of such net earnings after such payments shall be divided upon the preferred and common shares equally, share by share : " *Held,* That the preferred stockholders had no claim on the property superior to that of creditors under debts contracted by the company subsequently to the issue of the preferred stock, and that their only valid claim was one to a priority over the holders of common stock.

Bill to foreclose two railroad mortgages, and cross-bill by preferred stockholders to have their stock declared a lien on the property prior to one of the mortgages. On a demurrer the cross-bill was dismissed. The plaintiffs in that bill appealed.

*Mr. G. P. Lowrey* for the appellants.

*Mr. E. M. Johnson, Mr. Edward Colston* and *Mr. B. Harrison* for King and others, appellees.

*Mr. Wheeler H. Peckham* for Campbell, appellee.

Mr. JUSTICE BLATCHFORD delivered the opinion of the court.

In November, 1876, William King and others, holders of second mortgage bonds and of Springfield Division bonds of the Ohio and Mississippi Railway Company, filed a bill in the Circuit Court of the United States for the District of Indiana, to foreclose two mortgages on the property of the company,

subject to a first mortgage. In August, 1877, Allan Campbell, a defendant in that suit and trustee of one of the two mortgages, called the second mortgage, and also of the first mortgage, filed a bill and a cross-bill in the same court, to foreclose those two mortgages. In January, 1879, the two suits were consolidated. In December, 1879, George Henry Warren and others, as owners of preferred stock of the company, having been made parties defendant to the consolidated suit, filed a cross-bill. To this cross-bill a general demurrer for want of equity was interposed. The court sustained the demurrer, and entered a decree dismissing the cross-bill for want of equity. *King* v. *Ohio and Mississippi Railroad Company*, 2 Fed. Rep. 36. From this decree the plaintiffs in that bill have appealed to this court.

The sole question involved is whether the preferred stockholders are entitled to have their shares of stock declared to be a lien on the property of the company next after the first mortgage. As the question arises on demurrer, the allegations of the cross-bill are to be taken as true. The Ohio and Mississippi Railroad Company, having been incorporated by Indiana in February, 1848, was incorporated by Ohio in March, 1849, and by Illinois in February, 1851. Under a second mortgage made by it in January, 1854, all the property and franchises of the Illinois company were sold, on a foreclosure of that mortgage, in June, 1862, to the Ohio and Mississippi Railroad Company, an Illinois corporation created in February, 1861, for the purpose of purchasing the property and franchises of the Illinois corporation of February, 1851. The property and franchises of the Indiana and Ohio corporations were sold, under judicial decrees, in January, 1867, subject to certain mortgage debt recited in the decrees, to Allan Campbell and others, " trustees of creditors and stockholders of said Ohio and Mississippi Railroad Company (eastern division)." This trust was created by an instrument in writing dated December 15th, 1858, and known as the " trust agreement of creditors and stockholders of the Ohio and Mississippi Railroad Company of Indiana and Ohio." By it Allan Campbell and others were created trustees, for the purpose of providing for and protecting claims of

judgment creditors and other persons holding liens on the property and franchises of the company, and also certain holders of unliquidated demands against it, and also the interests of the stockholders of the company. Such interests of the creditors and stockholders became vested in the trustees from time to time, so that on the 14th of September, 1867, they were the owners, subject to the terms of the trust agreement, of the rights, claims and interests of all the creditors and stockholders of the company in its property and franchises, except those existing under a first mortgage made in May, 1853. The trustees issued, in exchange for the interests they so acquired, certificates in two classes, preferred and common. Under an amendment made in April, 1863, to the trust agreement, the trustees purchased, for the benefit of the trust and the persons interested therein under the agreement of December, 1858, all the stock and a portion of the bonds of the Illinois company of 1851, sometimes called the Western Division. On the 14th of September, 1867, the certificate holders, by an instrument known as " Amendments to the trust agreement of December, 1858," resolved that the trustees had made the purchase of January, 1867, for the benefit of those interested in the trust agreement of December, 1858, and had, in virtue of the amendment of April, 1863, purchased all the stock and a portion of the bonds of the Illinois company of 1851; that, by such purchases, the whole road from Cincinnati to St. Louis had become the property of the trust, subject only to outstanding mortgages; that it was the intention of all parties interested in the trust to form a new corporation, to which the entire property of the trust might be transferred, in accordance with the original agreement, such property to consist of all the rights and interests in the railroad in the three States; that the capital stock of the new corporation should consist of 35,000 shares of preferred stock and 200,000 shares of common stock, being in all $23,500,000 of stock, which should be issued and distributed to the owners of trustees' certificates registered on the books of the trust, as follows, namely, to owners of preferred certificates, preferred full-paid stock, for the amount of such preferred certificates, at the rate of one share of preferred stock

for every $100 of preferred certificates; that it should "be declared upon the face of said preferred stock that it is to be and remain a first claim upon property of the corporation after its indebtedness," that the holders thereof shall be entitled to receive from the net earnings of the company 7 per cent. per annum upon the amount of said stock, payable semi-annually, "and to have such interest paid in full, for each and every year, before any payment of dividend upon the common stock of said corporation, and that whenever the net earnings of the corporation which shall be applied in payment of interest on the preferred stock and of dividends on the common stock shall be more than sufficient to pay both said interest of 7 per cent. on the preferred stock in full, and 7 per cent. dividend upon the common stock, for the year in which said net earnings are so applied, then the excess of such net earnings, after such payments, shall be divided upon the preferred and common stock equally, share by share;" that the common stock should be issued to holders of common certificates at the same rate; that the new corporation should be authorized to create a new mortgage on its entire property, consisting of 340 miles of railroad from Cincinnati to St. Louis, and upon the contemplated improvements thereon, for an amount not exceeding $6,000,000, $4,000,000 whereof should be used exclusively to take up the then outstanding bonds issued under the mortgages theretofore created on said road; that, if a branch should be built to Louisville, the new corporation might increase the preferred stock at the rate of $10,000 for each mile in length of such branch, and the $6,000,000 mortgage to the amount of $15,000 for each mile of such branch; and that holders of the outstanding bonds of the old company, both eastern and western divisions, and holders of bonds to be issued by the new corporation, should be entitled to one vote for each $100 of bonds so held, at all stockholders' meetings, and on all affairs of the corporation.

Under statutes of Indiana and Ohio, Allan Campbell and others, as such trustees, became a corporation in those States by the name of the Ohio & Mississippi Railway Company. Its capital stock was fixed at 35,000 shares, of $100 each, of preferred stock, and 200,000 shares, of $100 each, of common

stock, and provision was made, in the certificate of incorporation, for increasing its preferred stock in an amount not exceeding $10,000 a mile for each mile of a branch to Louisville. In November, 1867, the Illinois company and the Indiana & Ohio company were consolidated under the name of the Ohio & Mississippi Railway Company, by articles of consolidation which provided for issuing preferred and common capital stock of the consolidated company to the extent above stated, and that the consolidated corporation should be authorized to create a new mortgage on the road for $6,000,000, of which $4,000,000 should be appropriated and used to take up the then existing mortgage bonds on the property, and should have—

"All such further powers and rights as are conferred and contemplated in certain amendments adopted by the certificate holders at a meeting held by them on the 14th day of September, A. D. 1867, of an agreement dated December 15th, A. D. 1858, of the creditors and stockholders of the Ohio & Mississippi Railroad Company of Indiana & Ohio, said agreement representing a trust which, at the date of said amendments, embodied the entire ownership of the property of both said companies so consolidated."

The consolidated company issued preferred stock to the amount of 35,000 shares, upon certificates in the following form :

"OHIO AND MISSISSIPPI RAILWAY COMPANY.
"Reorganized and consolidated 1867.
"*Preferred stock.*

"This is to certify that                is entitled to                shares of the preferred capital stock of the Ohio and Mississippi Railway Company, of one hundred dollars each, transferable only on the books of said company, in the city of New York, in person or by attorney, on the surrender of this certificate. The preferred stock is to be and remain a first claim upon the property of the corporation after its indebtedness, and the holder thereof shall be entitled to receive from the net earnings of the company seven per cent. per annum, payable semi-annually, and to have such interest paid in full, for each and every year, before any payment of dividend

upon the common stock ; and whenever the net earnings of the corporation which shall be applied in payment of interest on the preferred stock and of dividends on the common stock shall be more than sufficient to pay both said interest of seven per cent. on the preferred stock in full, and seven per cent. dividend upon the common stock, for the year in which said net earnings are so applied, then the excess of such net earnings after such payments shall be divided upon the preferred and common shares equally, share by share."

These preferred shares were issued in exchange for the trustees' preferred certificates, in pursuance of the resolutions of September 14th, 1867.

The cross-bill alleges that the certificate holders, by the resolutions of September 14th, 1867, intended and declared that the preferred stock to be issued should give to its holders not only a preference in respect to dividends over the common stock, but also the preference of a specific and continuing lien and security upon the property of the new corporation, next after the then existing mortgage indebtedness; that it was in accordance with and in execution of this intention that the certificate holders further resolved that it should be declared upon the face of the certificates of such preferred stock that it should be and remain a first claim upon the property of the corporation after its indebtedness; that the indebtedness referred to in the resolutions, and in the preferred stock certificates, was such indebtedness only as should arise under the $6,000,000 mortgage, that amount being designed to represent, and having been authorized for the purpose of taking up and cancelling the indebtedness existing at the time of the consolidation of the property of the two consolidating companies; and that the consolidated company, under the articles of consolidation, became bound to perform the provisions of the amendments of September, 1867, to the trust agreement, as to preferred stock, and the securing the same on the property of the consolidated company, to the full intent thereof.

Besides the preferred stock to the amount of $3,500,000, further preferred stock, in the above form, to the amount of

$800,000, was issued on the building of the Louisville branch. The plaintiffs in the cross-bill, as owners of shares of such preferred stock, aver that they, in common with the other preferred stockholders, had and have a lien and security and first claim upon all the property and franchises of the consolidated company which existed at the time of the original issue of such preferred stock, in or about the year 1867, next after and subject only to the indebtedness under the $6,000,000 mortgage, as authorized by said articles of consolidation, as representing and designed to cover and cancel the only indebtedness on either of the consolidated roads which was outstanding at the time of such consolidation, and are entitled to the payment of interest, as stipulated in the certificate, out of such net earnings of the company as may remain after payment of interest on first mortgage bonds, and in priority and preference to the payment of any interest or indebtedness under any mortgage subsequent in date to the first mortgage, that being a mortgage executed in December, 1867, under which bonds to the amount of about $6,800,000 have been issued; under the so-called second mortgage, issued in March, 1871, and sought to be foreclosed in the original suit, $4,000,000 of bonds have been issued. The other mortgage sought to be foreclosed in the original suit is called the Springfield Division mortgage, and was executed in January, 1875, to secure $3,000,000 of bonds.

The bill prays for a decree that such preferred stockholders are entitled, as such, to, and have always had, a specific and continuing lien and security and first claim upon and in all the property and franchises of the company, next after, and subject only to, the interest and security therein which is given under the first mortgage of December, 1867, and have been and are entitled to receive 7. per cent. interest upon their shares, out of the net earnings of the company remaining after the payment of interest to the holders of the first mortgage bonds. It also prays, that, in any decree of foreclosure of either of the mortgages so sought to be foreclosed, the rights of the preferred stockholders may be declared to be a lien and security on the property and franchises of the company next after that secured by the first mortgage of December, 1867;

that, in case of foreclosure of the first mortgage, all surplus, after the satisfaction of claims thereunder, be applied, first, to payment in full, or *pro rata*, of the par value of their shares, to the preferred stockholders; and that, in case of foreclosure of either the second mortgage or the Springfield Division mortgage, the decree therein shall provide that any sale, in either of such cases, shall be subject to not only the amount due under the first mortgage, but also, and next in order to the amount at par of the preferred stock, with all unpaid interest due thereon, at 7 per cent.

The rights of the holders of preferred stock in this case must be determined by the language of the stock certificate. That is exactly the same as the language of the written instruments which preceded the issuing of the certificates. The shares are shares of the capital stock of the company, though shares with different privileges from shares of the common stock. The certificate declares the quality of the preferred stock in two respects—(1) its relation to the property of the company; (2) its relation to the net earnings.

As to the property, it is declared that the preferred stock is to be and remain a first claim on the property of the company "after its indebtedness." But it is stock, and part of the capital stock, with the characteristics of capital stock. One of such characteristics is, that no part of the property of a corporation shall go to reimburse the principal of capital stock until all the debts of the corporation have been paid. It would require the clearest language to admit of the application of a different rule to any capital stock. Section 5 of the statute of Indiana of June 15th, 1852, "establishing provisions respecting corporations," 1 Davis' Statutes, 369, enacted as follows:

"If any part of the capital stock of such company shall be withdrawn and refunded to the stockholders before the payment of all the debts of the company, all the stockholders of such company shall be jointly and severally liable for the payment of such debts."

The railroad law of Indiana, of March 3d, 1865, 1 Davis' Statutes, 728, entitled "An Act to authorize, regulate, and

confirm the sale of railroads, to enable purchasers of the same to form corporations and to exercise corporate powers, and to define their rights, powers and privileges, to enable such corporations to purchase and construct connecting and branch roads, and to operate and maintain the same," under which law this company was reorganized, provided, in section 5, that the corporation should have power to "make preferred stock, make and establish preference in respect to dividends in favor of one or more classes of stock over and above other classes, and secure the same, in such order and manner, and to such extent, as said corporation may deem expedient;" and section 20 of the general law of Indiana of May 11th, 1852, providing for the "incorporation of railroad companies," 1 Davis' Statutes, 706, provided that a corporation organized under it might issue "a preferred stock to an amount not exceeding one-half of the amount of its capital, with such priority over the remaining stock of such company, in the payment of dividends, as the directors of such company may determine and shall be approved by a majority of the stockholders." It would be difficult to say that these statutory provisions allowed any preference in shares of capital stock, except a preference among classes of shares, or any preference of any class of shareholders over creditors. It is not to be supposed that those engaged in reorganizing this company intended to violate the law of Indiana, or the general principles of law applicable to private corporations. Nor is there anything to show that they did. The language of the certificate is entirely satisfied by referring it to a priority in rank of the preferred stock over the common stock, to a first claim of the preferred stock on the property of the corporation, after its indebtedness should be paid, when there should be moneys to be divided among stockholders, a claim which should be first as compared with the claim of other stock. Claims of stockholders, as such, on the corpus of the property of the company in which they are stockholders, do not arise until the debts of the company are paid. Until then the shares confer rights merely as regards profits and voting power.

It is urged, for the appellants, that the expression "after its indebtedness" means, next after the indebtedness then existing or then authorized; that the preferred stock was issued to the holders of preferred certificates, owners of the property, as a quasi purchase-money mortgage on its sale; and that they intended to preserve their position except as to the new $6,000,000 mortgage, because they authorized that and did not authorize any other. It is very certain that at best the words "after its indebtedness" are, by themselves, ambiguous on their face, and are as capable of being applied to future indebtedness as of being limited to then existing indebtedness. Under the general rules applicable to the position of the stockholders of a corporation, as regards its creditors, a claim of the kind here made should rest on clear and not doubtful language. But the provision which follows, as to the rights of the preferred stock in the net earnings of the company, leaves no doubt as to the meaning of the whole. There is a unity of right in the claim of the preferred stock on the property of the company, and in the title of its holder to receive a share of the net earnings of that property. His proprietorship in those earnings is a right to receive from them so much a year, if earned, before the common stock receives any dividend therefrom, and when the two classes of stock have each received the same specified amount out of the year's net earnings, he has the right to share equally in the surplus with the holder of common stock. Thus he can have no income on his stock unless there are net earnings. Those net earnings are what is left after paying current expenses and interest on debt and everything else which the stockholders, preferred and common, as a body corporate, are liable to pay. The holders of preferred stock have the same relation, by virtue of the certificate, to the corpus of the property, which they have to its net earnings. Their position in regard to both is one inferior to that of all creditors. They are not preferred as to reimbursement of principal, or as to a right to net earnings, over any one but the holders of common stock. The interest to be paid to them is not to be paid absolutely, as to a creditor, but only out of net earnings, the same fund out of which the dividends on common stock are to be

paid. Though called "interest," it is really a dividend, because to be paid on stock and out of net profits. There was no restriction on the creation of future indebtedness, and, necessarily, the net earnings of future business would be ascertained in reference to such future indebtedness and the interest on it; and the words "its indebtedness," in the same sentence, naturally mean "its future indebtedness," in reference to which the net earnings subsequently treated of are to be ascertained. Creditors may resort to the body of their debtor's property for interest as well as principal. But these holders of preferred stock are limited, for any income or interest, to the net earnings. There is nothing in the certificate which clothes them with a single attribute of a creditor, while it specially gives them, as stockholders, an equal interest with the common stockholders in the excess of net earnings in each year after paying therefrom 7 per cent. on each share of stock, preferred and common.

Whatever position the holders of preferred certificates occupied before they accepted preferred stock, whatever special rights of lien they had, they became corporators, proprietors, shareholders, and abandoned the position of creditors, and took up toward existing and future creditors the same position which every stockholder in a corporation occupies toward existing and future creditors. His chance of gain, by the operations of the corporation, throws on him, as respects creditors, the entire risk of the loss of his share of the capital, which must go to satisfy the creditors in case of misfortune. He cannot be both creditor and debtor, by virtue of his ownership of stock. In this case, all the parties holding trustees' certificates united to form the new corporation, and converted themselves into stockholders in it.

It seems very clear, that, if the trustees, representing the holders of trustees' certificates, had gone on and operated the road for them, not organizing a new company, any debts contracted by the trustees in the business would have had priority over the claims of the holders of such certificates. So, in becoming stockholders in the new company, with the right to vote as to its management and to share in its earnings, they

must have intended to allow, through the corporation, a priority of like debts over their claims as stockholders.

The same principles must govern the present case which were applied by this court in *St. John* v. *Erie Railway Company*, 22 Wall. 136, where creditors took preferred stock. It was held that they ceased to be creditors and could be regarded only as stockholders, with a chance for dividends out of net earnings and the power of voting, and a priority over holders of common stock, but not a priority over debts subsequently contracted.

Much stress is laid on the averment in the cross-bill, that the existence of the preferred stock and of the certificates therefor and of their contents was known to the trustees under the subsequent mortgages before those mortgages were made, and to the bondholders under those mortgages before they became such; and it is urged that the assent of the preferred stockholders to the creation of the subsequent mortgages should have been obtained. The answer to this view is, that the preferred stockholders had no rights which made their assent necessary to the validity, as against them, of the mortgages in question; and that, represented as they were by the corporation and its directors, the act of making the mortgages was a sufficient assent of the preferred stockholders, if assent were necessary, there being no allegation in the cross-bill inconsistent with the fact, that the issuing of the mortgages was known to and participated in and sanctioned by those who were holders of the preferred stock when the mortgages were created.

As to the claim that the appellants, if they have no priority over the second mortgage, have, at all events, as against the company, a lien next after the second mortgage, on the property not covered by the Springfield Division mortgage, and have, in any aspect of the case, a valid claim on the surplus assets of the company, after paying its debts, superior to the claim of the common stockholders, it is sufficient to say, that we do not deem it proper that those questions should be disposed of on a demurrer to this cross-bill, as they can be raised and decided under the answer which these appellants have filed as defendants in the consolidated suit.

*The decree of the circuit court is affirmed.*