SCHMOLL FILS ASSOCIATED, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 87536, 88000. Promulgated February 10, 1939.

*George A. Speigelberg, Esq.*, for the petitioner.
*John R. Wheeler, Esq.*, and *William G. Ruymann, Esq.*, for the respondent.

414

### OPINION.

VAN FOSSAN: The sole question in issue is whether the nonmaturing debentures issued by the petitioner are essentially certificates of preferred stock or are evidences of indebtedness. If the former, the semiannual payments thereon made by the petitioner are to be treated as dividends; if the latter, they constitute interest and are deductible as such under the statute.

In deciding questions of this character, our consideration is premised on certain basic principles, but the decision in each case turns upon the facts of that case. *Northern Fire Apparatus Co.*, 11 B. T. A. 355; *Proctor Shop, Inc.*, 30 B. T. A. 721; affd., 82 Fed. (2d) 792. The name given to a security is not determinative, but it is not to be ignored nor is it lightly to be assumed that the parties have given an erroneous name to their transaction. *I. Unterberg & Co.*, 2 B. T. A. 274; *Kentucky River Coal Corporation*, 3 B. T. A. 644; *H. R. DeMilt Co.*, 7 B. T. A. 7. The intention of the parties must be accorded great weight. *Commissioner* v. *National Grange*

*Mutual Liability Co.*, 80 Fed. (2d) 316, affirming 31 B. T. A. 666. Therefore, we must look to the "debenture" itself; to the antecedent acts and the intent of the parties as expressed in the record; and to the records and actions of the petitioner reference the matter.

The respondent contends first that the debenture is so similar in terms to the preferred stock certificate as to be practically equivalent thereto and that, taken as a whole, the debenture exhibits stock ownership characteristics which "transcended all other interests."

We do not agree. When the petitioner purchased all its preferred stock from the stockholders it terminated the relationship of corporation and preferred stockholders. The issuance of the debentures created a new and different contractual relationship with the purchasers of the debentures, the former stockholders. Their rights as preferred stockholders differed in certain basic respects from those which accrued as debenture holders.

The preferred stock was expressly so called and provided for payment of dividends. The holders of preferred stock had certain voting powers in event of contemplated dissolution, or on the question of the issue of additional preferred stock with preference over present preferred stock, or other change in preferences of preferred stock.

By express words appearing on the face of the debentures the corporation "acknowledged its indebtedness" and "promises to pay interest at the rate of Seven (7%) per cent per annum." The debenture holders had no voting rights in any event and had no voice in management. The rights at law of a preferred stockholder differ materially from those of a debenture holder.

The word "debenture" is variously defined, but all to the same tenor—that it evidences a debt. Thus, in Bouvier's Law Dictionary, "any instrument (other than a covering or trust deed) which either creates or agrees to create a debt in favor of one person or corporation or several persons or corporations or acknowledges such debt"; and in Funk and Wagnall's Standard Dictionary, "an instrument, in the nature of a bond, given as an acknowledgment of a debt and providing for repayment out of some specified fund or source of income."

Thus, though the terminology employed is only evidentiary and not conclusive, if any presumption exists, it is that the creation of an obligation styled a "debenture" is in recognition of a debt. Moreover, it would seem clear, on the face of the record, that the petitioner intended to create the debentures as an evidence of indebtedness. All of its preliminary resolutions and acts, together with the terminology used, so show. The corporate records and the treatment of the debentures in reports to the State of New York are consistent only with the debtor-creditor relationship.

The respondent's argument that the debenture is essentially preferred stock is based chiefly on the facts that it does not contain a provision that the holder may unconditionally demand his money at a fixed time and that the "so-called" interest payment is payable out of the profits of the petitioner exclusively.

It has consistently been held that the provision that the obligation contains no fixed final due date or becomes payable at the option of the maker does not destroy its character as an indebtedness. In *Helvering* v. *Richmond, Fredericksburg & Potomac Railroad Co.,* 90 Fed. (2d) 971, the court, in affirming the Board (33 B. T. A. 895) said:

> The fact that the principal of the guaranteed stock is not demandable by the stockholder in the absence of default in the payment of the guaranteed dividends is not conclusive of a stock investment. In the light of the other attributes of the stock, this indicates rather a debt as to which there is a right of renewal so long as the interest is paid when due. There is nothing in the fact that the debt evidenced by the preferred stock is not payable at a fixed time which throws upon the holders thereof any of the risks with respect to the corporate enterprise which are characteristic of the position of the stockholder.

See also *National Grange Mutual Liability Co., supra; Brush-Moore Newspapers, Inc.,* 37 B. T. A. 787.

To support his contention that the provision requiring interest to be paid exclusively out of profits brands the debenture as stock, respondent relies on *Commissioner* v. *O. P. P. Holding Corporation,* 76 Fed. (2d) 11, affirming 30 B. T. A. 337; and *Jewel Tea Co.* v. *United States,* 90 Fed. (2d) 451.

In the *O. P. P. Holding Corporation* case the court affirmed the decision of the Board that the debenture bondholders in question were in fact creditors. Though the discussion of the law by the court gives us some pause, we find no support for respondent's position in the decision in this case.

In the *Jewel Tea Co.* case the question related to the deduction of premiums paid on retirement of preferred stock, the facts there being very different from those before us.

In *H. R. DeMilt Co., supra,* we had for consideration a case where the debentures bore interest payable out of the net profits arising from the business of the company. There we said that such fact was not controlling. We think that is equally true in the case at bar.

Bearing resemblances both to preferred stock and to corporate indebtedness, as the debentures do, the case is not free from doubt. Our problem is to determine to which type the resemblance is greater. Considering the apparent intent of the corporation, the expressed terms of the debenture, the factual and legal incidences of the same,

and the absence of voting power or of other right in corporate management, we are of the opinion that the debentures evidence the relationship of debtor and creditor and that the interest paid was, accordingly, deductible.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

KERN dissents.

DISNEY, dissenting: I must dissent. Although feeling that the relation of debtor and creditor is lacking in the instant proceeding because of the lack of a definite time of maturity (*Jewel Tea Co.* v. *United States*, 90 Fed. (2d) 451), I shall discuss principally the fact that payment of interest is limited by being payable only from profits. In *Commissioner* v. *O. P. P. Holding Corporation*, 76 Fed. (2d) 11, the court laid down, I think, the sound distinction between a shareholder and a creditor as reflected in the difference between obligations being payable regardless of surplus, or payable limited to earnings. The court said:

\* \* \* The final criterion between creditor and shareholder we believe to be the contingency of payment. The shareholder is entitled to nothing, prior to liquidation, except out of earnings. Even on liquidation, at least in New York, arrears of cumulative dividends are confined to earnings. *Michael* v. *Cayey-Caguas Tobacco Co.*, 190 App. Div. 618, 180 N. Y. S. 532. These debenture bondholders were not so limited. The interest could be deferred, but it was not lost, though the company had no earnings; it could be collected, together with the principal, in 1954, from the corpus of the debtor's property, regardless of whether there should be a surplus. See *Warren* v. *King*, 108 U. S. 389, 399, 2 S. Ct. 789, 27 L. Ed. 769. This distinction marks the vital difference between the shareholder and the creditor. The shareholder is an adventurer in the corporate business; he takes the risks, and profits from success. The creditor, in compensation for not sharing the profits, is to be paid independently of the risk of success, and gets a right to dip into the capital when the payment date arrives. The courts have very frequently been called upon to determine whether the rights of a claimant are those of shareholder or creditor. Each case has turned on its special facts, and to cite them all would not be useful, if it were possible. We think all the decisions which we have examined may be harmonized by adopting the criterion above suggested. The decision of this court in *Re Fechheimer Fishel Co.*, 212 F. 357, is entirely consistent with this view. There interest on the so-called bonds was to be paid only out of earnings, and upon liquidation or dissolution the whole residue of the corporate assets after payment of the debts was to go to the bondholders. \* \* \*

In *Warren* v. *King*, 108 U. S. 389, though there were other circumstances, such as participation with common shares after payment of a certain percentage on both preferred and common stock, the Court emphasized, as reason for holding that there was no relation of debtor and creditor, the fact that the holder of the certificate could have no income unless there were net earnings; that interest was not to be paid

"absolutely, as to a creditor, but only out of net earnings, the same fund out of which the dividends on common stock are to be paid. * * * Creditors may resort to the body of their debtor's property for interest as well as principal. But these holders of preferred stock are limited, for any income or interest, to the net earnings."

In *Finance & Investment Corporation* v. *Burnet*, 57 Fed. (2d) 444, the court stressed, among other reasons for holding that payments to preferred stockholders were dividends and not interest under section 234 (a) (2) of the Revenue Act of 1926 (the same as section 23 (b), Act of 1932, so far as here involved), the fact that the payments were out of net earnings, and that no express time is fixed for payment, without the exercise of an option at the election of the stockholder or the corporation. In the instant case there is, of course, no such right of election on the part of the certificate holder to receive payment of principal.

In *Mercantile Trust Co.* v. *Baltimore & Ohio Railroad Co.*, 82 Fed. 360, there was involved a subscription by the State of Maryland to the Baltimore & Ohio Railroad Co. The Maryland statute provided that before any subscription to stock should be made, the stockholders of the company should bind the company to guaranty to the state payment "out of the profits of the organization" of 6 percent per annum until the profits enabled payment of a dividend of 6 percent, after which the state should be entitled to a perpetual dividend of 6 percent and no more (that is, no repayment of principal). The state had a right to six directors. The instrument was given, as required by the act. It was:

* * * *Held* that, the interest and dividends of the state being payable from "profits," it did not become a creditor of the company, but a preferred stockholder, having no equitable lien on the property of the company which entitled the holders of the stock to dividends from the earnings of the road in the hands of receivers in preference to the payment of interest on mortgage indebtedness subsequently contracted.

In the body of the opinion, it is stated:

* * * If it had been the intention of the legislature that the position of the state should be that of creditor, or analogous to that of creditor, there would be no reason for resricting its rights to a payment out of profits. A creditor might be restricted to payment out of revenue, or out of net revenue, or out of revenue from which enough has been taken to pay operating expenses, repairs, and fixed charges; but a creditor who is never to be paid the principal of his debt, and is to have only an annual sum, and is restricted, as to that annual sum, to a payment out of profits, is but a preferred stockholder. * * *

Emphasis is placed upon the fact that payment is to be made out of profits, and to the fact that, if there were no profits, there would be no payment.

420

In the field of life insurance, effect has been given both to the fact that repayment of a "loan" was from a certain fund and to the lack of maturity, for it has been held that where a life insurance policy requires the insurer to advance on the sole security of the policy, sums less than the reserve thereon, the relation of debtor and creditor between the parties is not created. In *Wagner* v. *Thieriot*, 197 N. Y. S. 560, so holding, emphasis is laid upon the fact that the so-called "loan" upon the policy was "on the sole security thereof", that the liability of the insurer was by such advancement *pro tanto* lessened, that the company was not in a position to press a claim against the estate of the decedent as a creditor, and that the beneficiary was entitled to receive only the amount of the policies, less the so-called "loan." To the same effect is *In re Hirsch*, 4 Fed. Supp. 708, wherein it is held that repayment of a "loan" upon a policy is not, strictly speaking, a debt, but is an advancement entailing no personal liability, and merely reducing the amount which the insurance company may be called upon to pay, the insurance company having no claim provable in bankruptcy. In *Board of Assessors* v. *New York Life Insurance Co.*, 216 U. S. 517, the same conclusion is reached, and it is held that where a policyholder simply withdraws a portion of the reserve on his policy and there is no personal liability, it is not a loan or credit upon which the company can be taxed as such, even though a policyholder gives a note upon which interest is necessarily charged to adjust the account. The Court stated: "The so-called liability of the policyholder never exists as a personal liability, it never is a debt, but is merely a deduction in account from the sum that the plaintiffs ultimately must pay. In settling that account, interest will be computed on the item for the reason that we have mentioned, but the item never could be sued for, any more than any other single item of a mutual account that always shows a balance against the would-be plaintiff." In *Williams* v. *Union Central Co.*, 291 U. S. 170 (179), *Board of Assessors* v. *New York Life Insurance Co.*, *supra*, is relied upon, in a similar situation of an advance against the reserve of a policy, and it was again affirmed that such advances do not create personal liability, or a debt of the insured, but are merely deductions from the sum that the company ultimately must pay—even though the advance is called a loan, and interest is computed in settling the account.

I believe that the position of the debenture holder here was that of having a lien or security upon a fund, the profits, for payment of interest, with no positive obligation to pay such interest and no obligation whatever to pay principal, and therefore no debt. The debenture twice refers to the principal money as "hereby secured." A holder of security is not thereby a creditor, in the sense of being able

to enforce personal liability. The instrument evidencing security is not evidence of the debt, which ordinarily is in the form of a note. Without such evidence of debt, the holder of security can not enforce in bankruptcy, or otherwise, a claim against the general assets of the person giving the security. The holder of security, in effect, has a contract to participate to a limited extent in certain assets. That, I think, is the position of the debenture holder here as to the interest. He is a participant, preferred over common stockholders during the taxable years in question here. We do not have before us the situation which might arise in the event of bankruptcy, dissolution, or liquidation. But even in that contingency, and as to principal, I think the relation of debtor and creditor did not exist between debenture holder and corporation; for the debenture holder is still only a participant—a participant in whatever estate and entitled to share in whatever estate or assets the corporation has upon such bankruptcy, dissolution, or liquidation. The corporation as a going concern is under no obligation to pay the principal and payment thereof can in nowise be enforced. The only right which the debenture holder has as to principal is not against the corporation, but against its estate in bankruptcy, dissolution, or liquidation. One so circumscribed as to collection is not, it seems to me, a creditor; certainly his position, so limited to some portion of whatever assets are left upon the demise, so to speak, of the corporation, is more analogous to that of shareholder than of a creditor of the corporation.

In bankruptcy, that which is received by the distributee is commonly referred to as a dividend, which not only is the same term applied to distributions to shareholders, but serves to emphasize the fact that it is received as the result of a division of the assets of the bankrupt. Even sharper emphasis is accentuated in the instant matter, for the debenture provides that, after debts to banks and bankers, debenture holders shall receive "dividends or other payments." A distribution of principal, possible only through dissolution, liquidation, or bankruptcy (in the absence of voluntary redemption) is thus plainly seen as not payment, but as sharing in a *division* of the assets of the corporation, by operation of law, necessarily on a plane of equality with all similarly situated. This is the nature of the right of a shareholder, or stockholder.

Moreover, the agreement that in the event of bankruptcy, liquidation, or dissolution the debenture holder would be in a position inferior to that of banks and bankers demonstrates that the debenture holder has a position inferior to that of a creditor—for the simple reason that no bank or banker (unless holding security, which is not the provision stated in the debenture) could arrogate to himself a position over that of common creditors. To do so would be to claim preference forbidden by law. Therefore every common creditor,

on equality with banks and bankers, would take precedence over the debenture holder, by his own covenant and agreement—and he would be left a position less than that of common creditor. By the terms of the debenture he surrendered any better position. So long as common creditors held claims to be satisfied the debenture holder could not participate. This, however, is the position of a shareholder.

Moreover, as a matter of fact, there is nothing to indicate that the debts of the corporation were not entirely held by banks or bankers. By assignment of any other debts to banks or bankers they could become holders of all of the corporate debts. Such banks and bankers, however, not being required to be secured creditors, it is obvious that petitioner has not shown that the debenture holders did not occupy a position inferior to and junior to that of the only creditors, and they common creditors—the position of a participant with common stockholders in the corporate assets after application thereof to satisfaction of rights of common creditors. This is the status, at best, of a preferred stockholder.

Another fact demonstrates analogy to stockholding: For two years no dividends were payable to common stockholders, surplus being accumulated during that time to pay the debenture interest—which was cumulative. The taxable years in question come within those two years, and we are constrained therefore to consider only the situation within that period. *Vermont-Hydro Electric Corporation*, 29 B. T. A. 1006; *Pantlind Hotel Co.*, 23 B. T. A. 1207. Plainly, then, the debenture holders in the taxable years had a preference over common stockholders. If they were creditors, they were preferred creditors, for ordinary creditors have no right to have dividends (within the earnings) withheld from common stockholders. Yet they were not preferred creditors, for banks and bankers had priority over them, even though having unsecured claims. Patently this discloses a participation, for two years and including the taxable years, in a fund which would otherwise have belonged to and would have been distributable to, the stockholders. An ordinary creditor, in order to participate therein, would, in the absence of voluntary payment, have been obliged to levy upon such fund in order to preclude its distribution as dividends to common stockholders. The debenture holders, however, had a covenant or agreement beforehand protecting them in payment from the two-year surplus. This covenant I believe to be of the essential nature of sharing with the stockholders. It protected against the weakness in the ordinary creditor's position, and is inconsistent therewith. I note that in *In re Fechheimer Fishel Co.*, 212 Fed. 357, referred to above in *Commissioner* v. *O. P. P. Holding Corporation*, the court considered as characteristic of stock, and not characteristic of bonds, the same situation here involved in the taxable years, i. e., the fact that the debenture bond should be entitled to

receive out of the earnings interest before any dividend should be paid on the stock, and that such interest should be cumulative. I conclude that the debenture holder is a shareholder, both during the two-year period and in case of bankruptcy, liquidation, or dissolution, and that petitioner is not entitled to deduction for interest paid. Though definitions of "debt" or "indebtedness" vary greatly in breadth or strictness of view, dependent upon the statute or law being construed, deductions, such as interest, under the revenue law are to be strictly construed. A fair, and not a strict, definition of debt "contemplates not only an obligation upon the debtor to pay, but a reciprocal right on the part of the creditor to enforce payment by appropriate proceedings. 1 Jones on Mortgages (7th Ed.) § 265."—*Guilford-Chester Water Co.* v. *Guilford*, 141 Atl. 880 (883). Such right, to enforce payment as to principal, the debenture holder did not possess. He could only share with the stockholders in case of dissolution, liquidation, or bankruptcy. I can discern no reason for allowing a taxpayer to deduct interest upon principal for the payment of which he is not bound and is in nowise interested, for it is payable only out of his estate (bankrupt, dissolved, or liquidated) and therefore of interest only to those who share therein. The right of the debenture holders to interest was limited to profits and during the taxable years was preferred over the common stockholders.

STERNHAGEN and HARRON agree with this dissent.