## MID-WEST RUBBER RECLAIMING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7952.

Circuit Court of Appeals, Seventh Circuit.

Nov. 6, 1942.

Daniel N. Kirby and Harry W. Kroeger, both of St. Louis, Mo., for petitioner.

J. P. Wenchel, Bureau of Internal Revenue, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Joseph M. Jones, Sp. Assts. to the Atty. Gen., for respondent.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

This review presents the question of whether petitioner sustained recovery of

an account due it from Akron Rubber Reclaiming Company for $41,231.36, which had previously been charged off as a bad debt. The Board of Tax Appeals resolved the issue affirmatively.

Akron, engaged in manufacture of rubber products, in 1928, caused petitioner to be organized as a rubber reclaiming company, entering into an agreement for financing the new corporation whereby it guaranteed that petitioner would pay annual dividends at the rate of four dollars per share on its preferred stock for ten years. Petitioner had an authorized capital of 24,000 shares of preferred stock and 60,000 shares of common. The holders of the former were entitled to cumulative dividends out of net profits or surplus earnings before any distribution could be made to the common stockholders.

Petitioner's continued losses resulted in a capital deficit on October 31, 1934 of $84,650.03. Under its guaranty, Akron paid $156,000 in dividends on preferred shares, through June 1, 1931, by checks containing assignments of the payee stockholders' rights to dividends thereafter declared for the periods covered by them and a further agreement by Akron that such assignments would not prejudice the preferred stockholders' rights to current or future dividends. During this same period, petitioner furnished Akron with certain commodities and services, the latter becoming indebted therefor in the sum of $41,231.30. Due to extreme financial straits of Akron, in October, 1934, petitioner charged off the debt as worthless and the Board of Tax Appeals approved such action.

In an attempt to recapitalize, petitioner found it desirable to remove the $156,000 contingent claim of Akron for reimbursement for the money paid out under its guaranty. Accordingly an arrangement was made, whereby, in exchange for $75,000, Akron released its contingent claim. Akron insisted that the account be surrendered also, and, though no formal release was executed, it appears that the petitioner, tacitly at least, assented. The evident sole purpose of including this release was to assure Akron that there would be no possibility that the claim might be asserted against it in the remote future, if it ever recovered solvency.

The Board of Tax Appeals based its conclusion that the debt was paid upon the theory that petitioner was actually indebted to Akron for $156,000 paid on its guaranty. Recognizing that this did not represent a debt in the ordinary sense, since it was contingent upon future earnings and consequent payment of dividends to preferred stockholders by petitioner, the Board reasoned that, looking at "the realities of the situation, Akron's claim against petitioner was just as real as a present accrued debt, if petitioner was ever to become a money making corporation." From this premise, the Board concluded that petitioner used the $41,231.36 debt of Akron's, plus $75,000, to wipe out its debt to Akron, and thus recovered its demand against the latter.

We think the undisputed facts fail to support this conclusion. In the first place, the $41,231.36 had been officially determined by the Board of Tax Appeals to be worthless, because of the hopeless financial condition of Akron. The latter was badly insolvent and there was not even a remote probability that it would ever be able to pay. When, a year later, the second transaction occurred, Akron was in an even more precarious financial position. It is unreasonable to assume that a worthless debt reacquired value under such circumstances.

The release of this account was no valuable part of the consideration for the agreement between petitioner and Akron. It was made merely to clear the slate and to put at rest any fear on Akron's part that petitioner might in the remote future try to bring the debt back to life. But petitioner did nothing to reinstall life in the debt; it never reinstated the demand on its books. The payment of $75,000 was the motivating force, and the release of the worthless debt an insignificant surrender of a lifeless thing.

We think the Board was impelled to its wrongful conclusion by its erroneous premise that Akron had a valid subsisting claim against petitioner for $156,000. It had, in fact, only a right to reimbursement out of contingent, uncertain future profits of petitioner. Until a dividend should be declared it had no evidence of indebtedness but merely a right to a proportionate share of the earned profits when and if they might accrue and be ordered distributed. Warren v. King, 108 U.S. 389, 2 S.Ct. 789, 27 L.Ed. 769; Kidd v. Puritana Cereal Food Co., 145 Mo.App. 502, 122 S.W. 784; McLaran v. Crescent Planing Mill Co., 117 Mo.App. 40, 93 S.W. 819.

When Akron paid the preferred stockholders under its guaranty, the effect

was merely to put it in the shoes of preferred stockholders,—to subrogate it to their rights. See In re Walter Deed of Guaranty, [1933] L.R., Ch.Div. 321. And when petitioner paid Akron $75,000 and extinguished the $41,231.36 claim, the latter in reality received a distribution in the nature of a dividend. The fact that there was no formal declaration of a dividend was immaterial. Wiese v. Commissioner, 8 Cir., 93 F.2d 921; Hadley v. Commissioner, 59 App.D.C. 139, 36 F.2d 543. This was not satisfaction of a valid existing debt.

The decision is reversed.