**WASHMONT CORPORATION v. HEN-DRICKSEN, Acting Collector of Internal Revenue.**

**No. 10228.**

Circuit Court of Appeals, Ninth Circuit.

July 27, 1943.

Jones & Bronson and H. B. Jones, all of Seattle, Wash., for appellant.

Samuel O. Clark, Jr., Asst. U. S. Atty. Gen., Sewall Key, Willard H. Pedrick, and Helen Goodner, Sp. Assts. to Atty. Gen., J. Charles Dennis, U. S. Atty., of Seattle, Wash., Harry Sager, Asst. U. S. Atty., of Tacoma, Wash., and Thomas R. Winter, Sp. Asst. to the Chief Counsel, of Seattle Wash., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Associated Breweries of Canada was a Canadian corporation. Prior to 1937, Associated owned the controlling interest in several American breweries. Emil G. Sick, president of Associated and citizen of the United States, also owned stock in American breweries. Because this ownership of the stock by the Canadian corporation prevented local control of the breweries and as it was allegedly thought the ownership was violative of Montana and Washington statutory prohibition against alien ownership of land, it was decided to divest Associated of this ownership. The Washmont Corporation was organized in 1937. On organization Mr. Sick transferred to it his stock in the Seattle Brewing & Malting Company valued at $25,000 and received 24,800 of the $1 voting shares in Washmont Corporation. One hundred shares each were issued to two others. The authorized capital stock was $50,000, and the amount of paid-in capital stock with which the corporation began business was $25,000. Washmont Corporation, the taxpayer herein, received from Associated $625,000 in shares in American breweries. In exchange, Associated received the taxpayer's "Participating Dividend Debenture Certificates" in the amount of $625,000.

The taxpayer filed its income tax returns for the years 1937 and 1938 as an ordinary corporation. Thereafter, the Commissioner of Internal Revenue determined the appellant was a personal holding company and assessed deficiencies and penalties against it, under the provisions of Section 351 et seq., Revenue Act of 1936, as amended by the Revenue Act of 1937, 50 Stat. 813, and Section 407 of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code §§ 500 et seq., 506 on the theory that the debenture certificates evidenced indebtedness and not stock ownership, and, therefore, there were only three stockholders in Washmont corporation.

The pertinent provisions of the Act so far as concerns the question here involved are as follows:

"Section 352. Definition of Personal Holding Company. (a) General Rule. For the purposes of this [title] and of [Title] 1 the term 'personal holding company' means any corporation if—

\* \* \* \* \*

"(2) At any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals." 26 U.S.C.A. Int. Rev.Code, § 501(a) (2).

Pursuant to the above mentioned determination the appellant taxpayer paid the sum of $6,815.32, the amount of the deficiency and interest, and thereafter on July 19, 1940, filed claims for refund, which

308

claims were rejected. Suit was brought in the District Court of the United States for the Western District of Washington, Southern Division, for recovery of $6,693.-98, allegedly unlawfully collected of the taxpayer herein, a sum of $121.34 determined as an overpayment having been refunded.

The lower court found that the certificates created and were intended to create an indebtedness against the corporation, which fact was manifested by acknowledgment of the indebtedness, absolute promise to pay, and provision for lien. From this decision, this appeal is taken.

The only question presented is whether the debenture certificates constitute stock or evidences of indebtedness. If the certificates are not stock then Washmont Corporation stock is held by not more than five persons and the corporation comes within the personal holding company tax provision.

The problem here is a difficult one. The debenture certificates contain certain unusual provisions upon which the appellant relies in urging that they should be treated as certificates of stock: namely, that interest "is only payable out of the net earnings of the company for the fiscal year"; and the debenture owners were to share equally in earnings with the common stock after each received specified dividends. It is contended that these factors ordinarily distinguish capital stock from indebtedness.

The appellant has urged that the name given to the instrument is not controlling, but that its inherent characteristics will determine its true nature and legal effect. This is conceded, but it does not follow that the designation of the certificate by the issuing corporation is to be completely ignored. The language used in writing the contract between the debenture holders and the corporation while not conclusive is evidence of the intent of the parties.

In the debenture certificates, the taxpayer acknowledged indebtedness and promised to pay the principal sum twenty years from date with the provision for accelerating maturity. The debenture was to be a lien on the property of the corporation and net earnings of the company. Interest was payable semi-annually at the rate of 3% and was to be paid from net earnings. After common stock received dividends, debentures and common stock shared surplus proportionately. On redemption debentures were to share in surplus. No vote was given to the holder. The taxpayer did not secure any increase in the capital stock authorization in connection with the issues of the debentures.

Not any of the cases which have decided this issue as to whether certificates are evidences of debt or stock ownership comprehend all the points that arise in this case. The decision in all cases has turned on the facts of the individual case. In each case, the court must determine whether the transaction was an investment in stock or a loan to the corporation.

The debenture on its face is an acknowledgment of debt—a promise to pay a fixed sum of money at a fixed date. It has repeatedly been held that one of the characteristics of a debt is a definite determinable date on which the principal falls due. Elko–Lamoille Power Co. v. Commissioner of Internal Revenue, 9 Cir., 50 F.2d 595, 597; Brown-Rogers-Dixson Co. v. Commissioner of Internal Revenue, 4 Cir., 122 F.2d 347, 350; United States v. South Georgia Railway Co., 5 Cir., 107 F.2d 3, 5. While the interest was payable out of earnings, another characteristic of stock, these debentures, however, in effect were not so limited. The interest could be deferred because there were no earnings but payment could be required eventually. The debenture holder had a lien. This marks the distinction between the stockholder and the creditor. The stockholder is an adventurer in the corporate business, he takes the risks; the creditor is to be paid independently of the risk of success. While it is true that issues of preferred stock often provide for a lien, those cases can be distinguished from the one before the court, as the debenture holder in this case is to be paid ultimately a definite sum at a fixed time (unless paid before) which makes his relation to the corporation as that of creditor. The final criterion of distinction between the creditor and the stockholder is the certainty of payment before insolvency or liquidation. The preferred stockholder unlike the creditor is entitled to nothing prior to liquidation, except out of earnings.

There is the further provision that on liquidation holders of debenture certificates were to participate in the assets along with the common stockholders. If this were the only provision of the certificate to be con-

sidered, the debenture might well be preferred stock. The trial court found that there was a "secondary intention in the minds of the incorporators to permit the prospective holder or holders of these certificates to have some contingent equitable interest in the corporate assets, but it was their primary intention at the time of the creation and issuance of these certificates that they should not be stock * * * as the writing itself primarily and essentially is a statement of debt * * * with an absolute promise to pay * * * at a definite time in the future, with provision for accelerating maturity, all obligations secured by a lien on all of the corporation's property, notwithstanding participating dividend and asset distribution features."

■ To determine the real intention of the parties, it has been held that evidence outside of the contract is admissible. Commissioner of Internal Revenue v. Proctor Shop, Inc., 9 Cir., 82 F.2d 792; Helvering v. Richmond, F. & P. R. Co., 4 Cir., 90 F.2d 971, 975.

■ There was testimony that the Washmont Corporation in its dealings with the People's National Bank of Washington represented these debentures to be capital stock and the bank relied on the fact that they were capital stock. On the other hand, the debenture certificate itself provides that payments of interest and dividends to the debenture holders are "subject to deduction for any Federal Income Tax or other taxes due thereon because of or by reason of any present or future laws of the United States of America or the State of Washington." In 1937 and 1938, in accordance therewith the taxpayer claimed interest deduction for interest payments to debenture holders. The contradiction existing here in the manifested intention of the issuing corporation is due to the fact that the corporation's financial interest has ever been the primary determining factor as to whether the corporation would call the debentures stock or indebtedness. The corporation asserted the debentures to be capital stock to the bank and then claimed payments on the same as payments on indebtedness in making income tax returns. It just as clearly

intended the nature of the debentures should be indebtedness, particularly, since the certificates themselves provided that all interest or dividend payments thereon were to be deducted as payments of interest on indebtedness on income tax returns. Under such circumstances, the corporation, having placed itself in such a position, cannot now be heard to deny that the instruments are debenture certificates.

■ In so holding we are influenced primarily by the fact that these certificates are payable irrespective of the sufficiency of the earnings or surplus of the company, and also the fact that there is a fixed maturity date at which time the owner can demand payment whether or not there are net earnings. This is an essential feature of the debtor-creditor relationship. The holder is risking neither his capital nor return on the fortune of the company. His loan was payable whether the company made profits or not and he secured the return of his principal with a lien, which are characteristics of a loan and not a proprietary interest. Haffenreffer Brewing Co. v. Commissioner of Internal Revenue, 1 Cir., 116 F.2d 465, 468; Warren v. King, 108 U.S. 389, 398, 2 S.Ct. 789, 27 L.Ed. 769; United States v. South Georgia Railway Co., 5 Cir., 107 F.2d 3, 5; Commissioner of Internal Revenue v. O. P. P. Holding Corporation, 2 Cir., 76 F.2d 11, 12.

Giving consideration to all the terms and provisions of the debentures and the testimony in evidence, we are forced to conclude that the debenture certificate is evidence of indebtedness owed by the corporation and not a true certificate of ownership in the corporation.

■ The court committed no error in refusing to receive and consider the minutes and records made by the appellant after the Revenue Agent's office had indicated that it would hold the debentures to be a debt rather than stock and would classify appellant as a personal holding company.

Affirmed.

HANEY, Circuit Judge, did not participate in the consideration or decision of the case.