**FISHEL et, Plaintiffs-Appellants v. MILLER et, Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 19251.   Decided January 24, 1944.

114

Max S. Fishel, Cleveland, David Perris, Cleveland, for plaintiffs-appellants.

S. N. Weitz, Cleveland, for defendants-appellees.

ROSS, P. J., HILDEBRANT and MATTHEWS, JJ. (First District), sitting by designation.

## OPINION

By MATTHEWS, J.

This is an action by a judgment creditor of The National Refunding Corporation, to subject to the payment of the judgment assets of the judgment debtor that cannot be reached by execution.

The action came into this Court on appeal on law and fact from a judgment of the Common Pleas Court. The action was submitted to this Court upon the transcript of the evidence adduced in the trial of the case in the Common Pleas Court.

The plaintiffs alleged that the defendants, other than their judgment debtor, had property of and were indebted to their judgment debtor and prayed that they be compelled to disclose and account for said property and that it be subjected to the payment of their judgment and such further relief as they might be entitled to in equity.

(1). In the answer of the Morris Plan Bank of Toledo it is admitted that it has in its possession or under its control various choses in action transferred to it by National Refunding Corporation as collateral security to a loan made by Morris

Plan Bank to National Refunding Corporation. The answer sets forth a long list of items, most of which show debts due from various persons to National Refunding Corporation, which had been assigned by it to Morris Plan Bank as collateral security.

The evidence discloses the details of the arrangement between National Refunding Corporation and Morris Plan Bank and that the former had assigned all of its choses in action to the latter. But it is unnecessary to analyze the evidence on this subject, because the admissions of the answer are sufficient to entitle the plaintiffs to a disclosure and accounting of the state of the accounts between National Refunding Corporation and Morris Plan Bank at the present time and for a decree subjecting any equity that may exist in favor of National Refunding Corporation after the payment of the debt of Morris Plan Bank to which it is collateral.

In deciding this case, the Common Pleas Court said:

"If I might indulge in a look into the future, it seems to me that there will be sufficient assets of the National Refunding Corporation to pay this judgment in the future."

That statement was a recognition of existing assets but the court failed to recognize that a creditor is entitled to a present remedy to subject existing assets regardless of the form in which they happen to be.

(2). Prior to February, 1941, the defendant, Sylvester G. Miller, who was president of National Refunding Corporation, borrowed money and used its credit under such circumstances as to cause some of its stockholders to challenge the validity of the transactions. Litigation resulted. A settlement was finally reached in which the defendant Miller acknowledged an indebtedness of $34,250.37 to National Refunding Corporation. Miller owned 1334 shares of Morris Plan Bank stock, which was pledged to the Ohio Citizens Trust Company, and was not presently available for use in satisfying the debt due to National Refunding Corporation. The parties seemed to have recognized that the situation called for a novation whereby some of the Morris Plan Bank stock owned by Miller would be fastened upon them to satisfy when available the Miller indebtedness to National Refunding Corporation. Accordingly, an agreement was entered into with that end in view, and as the preferred stockholders were the ones who had challenged the validity of Miller's action and were the chief and perhaps the only objectors, they dictated this form of the settlement as can be seen from the terms of the agreement.

As as part of the settlement the capital structure of the National Refunding Corporation was changed, under the power conferred by §8623-15a GC. The holders of the Class A Preferred stock surrendered their stock and accepted instead other Class A Preferred stock containing a provision for redemption not in their former stock. This provision was as follows:

"Said shares shall be without par value but shall have a declared value of $15.00 each. At any time prior to September 1st, 1945, the corporation shall have the right and privilege of redeeming and retiring all of said shares by delivering to the Holders thereof shares of the present $50.00 par value stock of the Morris Plan Bank of Toledo, an Ohio corporation, at the rate of .3615 of one share of said stock of said the Morris Plan Bank of Toledo for each of said Class A Preferred shares then outstanding. In event the corporation shall fail to redeem said shares in manner and within the time aforesaid, each Holder thereof shall have the right thereafter, at his election, to require the corporation (upon written demand and notice of his election) to redeem and retire his said shares by either (as the shareholder may elect) (a) delivering share of the capital stock of the Morris Plan Bank of Toledo on the basis aforesaid, or (b), paying to the holder the then fair value in cash of the shares of the Morris Plan Bank of Toledo to which he would be entitled under option (a) or (c) paying to the Holder $32.50 per share for each of the corporation's Class A Preferred shares tendered for redemption."

Miller and National Refunding Corporation entered into an agreement whereby Miller was to and did enter into an agreement with The Cleveland Trust Company, whereby it became the depositary and trustee of 667 shares of the stock pledged by Miller with Ohio Citizens Trust Company so that upon the release of the stock from the pledge it would be delivered to the Cleveland Trust Company. And Miller agreed with National Refunding Corporation to pay instalments on his debts to Ohio Citizens Trust Company and to entirely liquidate the debt by September 1, 1945 so that Ohio Citizens Trust Company could be called upon to deliver the stock. The agreement between Miller and National Refunding Corporation was in the form of a letter to The Cleveland Trust Company, which contained this provision:

"The undersigned, National Refunding Corporation, has duly effected a PLAN OF REORGANIZATION, a copy of which it attached hereto. If and when you shall have received on deposit the said shares of the Morris Plan Bank of Toledo or the said cash payment in lieu thereof, you are directed and instructed then to cause to be issued and/or to pay to each of the holders of the new Class A Preferred shares designated in such PLAN upon surrender of their respective certificates for redemption the shares or sums to which they will thereby become entitled in accordance with said PLAN OF REORGANIZATION."

In the agreement between Miller and The Cleveland Trust Company it is recited that "the said Miller has agreed to secure the release of one-half of these shares so that they will be **available to the National Refunding Corporation** in order that they may be used to redeem the Class A Preferred shares" and also, that if Miller should fail to do the things agreed to be done by him in order to make the Morris Plan Bank stock available for redemption and for that reason the stock should **"not be available to the National Refunding Corporation** for use in redemption" then Miller should be liable for the value of the stock.

It was also provided that the stock or the money should be employed by the trustee **"in conjunction with the National Refunding Corporation"** in the redemption of the stock.

The agreement of Miller with The Cleveland Trust Company was incorporated into and made a part of the agreement between Miller and National Refunding Corporation.

The plaintiffs represented National Refunding Corporation as its attorneys in effecting this novation and their judgment is based on their claim for compensation for such services. They had full knowledge of, consented to, and are therefore in no position to claim that they dealt with the corporation in reliance upon any contrary appearance or representation.

Now it is asserted that as National Refunding Corporation was solvent at that time, it had a right to distribute its capital, and that the plaintiffs, whose claim at best had only a potential or partial existence at the time, have no right to disturb the arrangement or to subject the Morris Plan Bank stock or any interest therein to their judgment.

It seems to us that this assertion ignores the pivotal fact in this case. A judgment creditor's right to subject equitable

assets does not depend upon the time when his claim accrued, or his judgment was obtained, or upon proof of insolvency at any time, or upon proof of facts showing a right to a lien upon a fund. He establishes his right upon proof of equitable assets of his judgment debtor and the necessity of resorting to them to secure satisfaction of his judgment.

So, the real question is whether National Refunding Corporation has any equitable beneficial title in the Morris Plan Bank stock which is the subject of the agreement between Miller, National Refunding Corporation and The Cleveland Trust Company.

In reaching a conclusion on that subject, we assume that National Refunding Corporation could and did effect a reorganization of its corporate structure by the proceedings under §§623-15a GC, but that only brought into existence the Series A stock with certain rights and National Refunding Corporation's title was not affected in the slightest by this intercorporate action. Its title to its claim could only be transferred or extinguished by corporate action with that intent, and that intent can only be ascertained by construing the agreement which it made with Miller, by rules that are in conformity with law and sound public policy.

It seems to be the defendant's thought that the contractual intent was that if and when title to this Morris Plan Bank stock passed to Class A Preferred stockholders, it bypassed National Refunding Corporation and went directly from Miller to the stockholders. A consideration of the quoted portions of their agreement does not support this conclusion. The complicated arrangement may obscure but cannot change the fact that it was the property of the corporation and not that of the stockholders that was the subject-matter of the agreement. While the agreement, by placing the Morris Plan Bank stock in trust controls the action of National Refunding Corporation and insures that it will, unless prevented by superior intervening duties, devote it to the redemption of the Class A stock, still that redemption was necessarily the act of National Refunding Corporation and the parties recognized that fact in the agreement. Miller could not redeem and retire the stock. Neither could The Cleveland Trust Company. Only National Refunding Corporation could redeem it and thereby effect a reduction of its capital stock and terminate the relation of stockholders.

So, we conclude that the rights brought into existence by the contract between Miller and National Refunding Corpora-

tion belonged to the latter and not to Class A Preferred stockholders until the redemption was executed in 1945, and that in the interim that property, as all other property of National Refunding Corporation, and to the same extent, was subject to the vicissitudes of its business and to the claims of its creditors. And during that time, Class A stockholders remained such with all the rights of stockholders to participate in the internal management of the corporation. As integrated parts of the corporate equity, its creditors were their creditors. As integrated parts of the corporate debtor, no inter-corporate arrangement could give them rights equal to those dealing with the corporate entity. Until the disintegrating process of redemption freed them from the corporate entity, their investment could not take the form of separate ownership of an asset, theretofore owned by the corporation. So long as the fact is that the relation of stockholder exists, the same fact cannot be interpreted as showing another relationship, such as individual ownership. Truth is not janus-faced. Indeed an actual attempt to clothe the relation with the double aspect of stockholder and creditor would fail because of infringement of public policy. In Esmiling v Toledo, St. L. & K. C. R. Co., 78 Fed. 664, the court at 670 and 671, said:

"One cannot well be a creditor as respects creditors proper, and a stockholder by virtue of a certificate evidencing his contribution to the capital of the corporation. Stock is capital, and a stock certificate but evidences that the holder has ventured his means as a part of the capital. It is a fixed characteristic of capital stock that no part of it can be withdrawn for the purpose of reimbursing the principal of the capital stock until the debts of the corporation are paid. These principles are elementary. Warren v King, 108 U. S. 389, 2 Sup. Ct. 789; Cook, Stock, Stockh. & Corp. Law (3d Ed.), Sec. 271. The chance of gain throws on the stockholder, as respects creditors, the entire risk of the loss of his contribution to capital. 'He cannot be both a creditor and debtor by virtue of his ownership of stock.' Warren v King, supra. If the purpose in providing for these peculiar shares was to arrange matters so that, under any circumstances, a part of the principal of the stock might be withdrawn before the full discharge of all corporate debts, the device would be contrary to the nature of capital stock, opposed to public policy, and void as to creditors affected thereby. Cook, Stock, Stockh. & Corp. Law (2d Ed), §§270, 271; Chaffee v Railroad Co., 55 Vt. 110; McCutcheon v

Capsule Co., 10 C. C. A. 108-115, 71 Fed. 787; Morrow v Steel Co., 87 Tenn. 262, 10 S. W. 491."

And by creditor, we take it is meant any contractual arrangement, whereby stockholders attempt to place themselves before creditors in the assets of the corporation.

In Spencer v Smith, 201 Fed. 647, the court held that a mortgage given on corporate assets in an attempt to secure preferred stock was null and void as against general creditors of the corporation.

See also: Hazel Atlas Glass Co. v Van Dyk & Reeves Co., 8 Fed. (2d), 716; and Warren v King, 108 U. S. 389.

For these reasons, we find that the Morris Plan Bank of Toledo has assets, to-wit; choses in action in its possession and control in which the judgment debtor has an equitable interest, that the judgment debtor has an equitable interest in the Morris Plan Bank stock pledged with Ohio Citizens Trust Company and sub-pledged with the Cleveland Trust Company, and that the plaintiffs are entitled to the equitable remedies for which they prayed to compel disclosure and an accounting by all the defendants of the property under their control, and to a decree subjecting such equitable assets to the payment of the plaintiffs' judgment.

ROSS, P. J., and HILDEBRANT, J., concur.